# CASES DECIDED

IN THE

# Supreme Court of Appeals

## OF VIRGINIA

### Richmond

## J. H. McClannan v. Oscar Chaplain, et als.

March 15, 1923.

1. TRESPASS—*Damages—Right to at Least Nominal Damages where Trespass is Established—Case at Bar.*—In the instant case, an action for trespass on the case against special police officers appointed under section 4797 of the Code of 1919, it was not disputed that defendants entered upon the farm of plaintiff in search of a still. Therefore unless the defendants' entry upon the farm was lawful because of the authority conferred upon them by law by reason of their official positions, and the quest they were upon, they were trespassers, and liable for nominal damages, at least.

2. TRESPASS—*Lawful Entry—Officers Exceeding their Authority—Trespassers Ab Initio.*—In the instant case, an action for trespass on the case against special police officers appointed under section 4797 of the Code of 1919, even if the entry of the defendants upon the farm of plaintiff in search of a still was lawful, if, after the entry, they, in their conduct, exceeded their authority by doing some act which they had no right to do, the law will consider them as trespassers *ab initio.*

3. TRESPASS—*Lawful Entry—Subsequent Disorderly Conduct—Exemplary Damages—Case at Bar.*—In the instant case, an action for trespass on the case against special police officers appointed under section 4797 of the Code of 1919, if defendants' entry upon the farm of plaintiff in search of a still was lawful, yet if while on the premises defendants were guilty of disorderly conduct injurious to the plaintiff, which was malicious or wanton, or conduct in violation of the search warrant statute (Acts 1920, pp. 516, 517), they were liable for punitive damages. In the instant case, however, the jury were plainly warranted in finding from the evidence that there was no common law liability upon the defendants for malicious or wanton conduct.

4. Searches and Seizures—*Necessity of Search Warrant—Private Real Estate not Consisting of the Dwelling House or Curtilage.*—A search warrant is not required at common law or under such constitutional provisions as section 10 of the Virginia Constitution or the fourth amendment to the Federal Constitution, for the search by an officer of private real estate not consisting of the dwelling house or curtilage or land in the actual custody at the time of some person.

5. Searches and Seizures—*Necessity of Search Warrant—Private Real Estate not Consisting of the Dwelling House or Curtilage—Case at Bar.*—In the instant case, an action for trespass on the case against special police officers appointed under section 4797 of the Code of 1919 for entering upon plaintiff's farm in search of a still without a search warrant, the defendant officers had the lawful right, without a search warrant, and without the consent of the owner or tenant of the land (he offering no actual resistance or objection at the time thereto), to enter upon a part of the farm in question away from the dwelling house and curtilage, in the exercise of the duty of police inspection imposed upon them by law—*i. e.*, to ascertain if an illegal still was where they had been informed it was hidden on the farm, away from the dwelling house and curtilage.

6. Police—*Conservators of the Peace—Special Police Appointed Under Section 4797 of the Code of 1919—Duty of Police Inspection—Necessity of Search Warrant.*—By section 4797 of the Code of 1919 special police officers appointed under that section are conservators of the peace in their respective counties. The office of conservators of the peace is a very ancient one, and their common law authority to make police inspection, without a search warrant, extends throughout the territory for which they are elected or appointed, as the case may be, in private as well as in public places, and upon private as well as public property, unless inhibited from entry for such purpose without a search warrant by some rule of the common law, or by Constitution, or by statute.

7. Police—*Powers and Duties—Common Law.*—While the duties and powers of police officers are, in modern times, largely defined and regulated by statute, it is elementary that "the common law may be relied on to supply many incidents" of their powers "and others are based on what may be necessarily implied from the powers expressly conferred."

8. Searches and Seizures—*Necessity of Search Warrant—Land Remote from the Dwelling House or Curtilage—Section 10 of the Constitution of 1902.*—Neither section 10 of the Constitution of 1902 nor Acts 1920, pp. 516, 517, prohibits an officer from entering upon privately owned land remote from the dwelling house or curtilage, and not in the immediate actual possession of any one, without a search warrant.

9. Searches and Seizures—*Necessity of Search Warrant—Land Remote from Curtilage or Dwelling—Unreasonable Search or Seizure.*—The only entry by officers to make police inspection without a search warrant which is held to be unlawful is that which occurs when the officers are making an unreasonable search or seizure. Such a search or seizure is forbidden by the common law, and by the fourth amendment to the Constitution of the United States, which is but declaratory of the common law on the subject.

10. Searches and Seizures—*Necessity of Search Warrant—Section 10 of the Constitution of 1902.*—In Virginia we have no constitutional provision on the subject of unreasonable searches and seizures, except section 10 of the Constitution of 1902, which merely forbids searches and seizures under general warrants, not searches and seizures without any warrant.

11. Searches and Seizures—*General Warrants—Definition—What are Unreasonable Searches or Seizures.*—General warrants are search warrants issued "(1) without any evidence of fact furnished previously to the issuance, or (2) which do not designate any specific thing or person to be seized, or (3) do not particularly describe the offense claimed to have been committed." Such search warrants would, if valid, authorize unreasonable searches and seizures, and for that reason they are condemned by section 10 of the Constitution; and in so doing section 10 merely adopts and makes unchangeable by the legislature the common law on the subject to that extent.

12. Searches and Seizures—*Unreasonable Search.*—By an unreasonable search is meant a search which is unreasonably oppressive in its invasion of the liberty of a citizen.

13. Searches and Seizures—*Unreasonable Searches—Object of the Prohibition—Property Rights.*—It is the personal and political liberty of the citizen, especially the privacy of his home and his papers, which is sought to be protected by the common law rule against "unreasonable" search and seizure, and which would be considered unreasonably violated if certain searches and seizures were permitted without search warrant, or under general search warrants. No right of property is primarily intended to be protected by the prohibition, and certain property rights are incidently protected only because they are immediately incidental to and inseparable from the enjoyment of the personal rights.

14. Searches and Seizures—*Reasonable Search and Seizure without a Search Warrant.*—Only unreasonable searches and seizures are forbidden by the common law rule, or by the Federal and State constitutional provisions on the same subject; "reasonable" searches and seizures without a search warrant are not thereby forbidden; and that what is a reasonable or an unreasonable search or seizure is

"purely a judicial question, and in determining it the court must look to all the circumstances."

15. SEARCHES AND SEIZURES—*Search without Warrant—Illegal Still—Case at Bar.*—Not all searches and seizures are forbidden. It has never been deemed unreasonable to search for and take stolen property, smuggled goods, etc.; and the same rule has been uniformly held to apply to contraband, such as the illegal still for which the defendants in the instant case were searching, and no privacy of the plaintiff was invaded. Therefore, the search, without a warrant, of the plaintiff's premises, remote from his home and curtilage, and not even in his personal presence, was not an unreasonable search forbidden by the common law.

16. SEARCHES AND SEIZURES—*Necessity of Search Warrant—Land Remote from Dwelling House or Curtilage—Acts 1920, pp. 516, 517—Case at Bar.*—In the instant case, an action for trespass on the case against special police officers appointed under section 4797 of the Code of 1919 for entering upon plaintiff's farm in search of a still without a search warrant, the search warrant statute (Acts 1920, pp. 516, 517) did not require the defendant officers to obtain a search warrant before making the entry on the land of the plaintiff remote from his dwelling and curtilage, and not in his presence or immediate actual possession, for the purpose of searching for the illegal still which they had cause to suspect was there.

17. STATUTES—*Construction—Search Warrant Act—Prohibition Statute—Search Remote from House or Curtilage.*—Every constitutional or statutory provision must be construed with the purpose of giving effect, if possible, to every other constitutional or statutory provision. Thus, the provisions of the search warrant statute (Acts 1920, pp. 516, 517) must be construed in the light of the provisions of section 21½ of the prohibition law of the State, authorizing the seizure of illegal stills without a warrant, and in the light of the common law and the statutory authority conferred upon special police officers appointed under section 4797 of the Code of 1919. So construing such search warrant statute, its provisions have no application to the search by police officers of a place remote from a dwelling and curtilage and not in the immediate actual possession of the owner or tenant.

18. SEARCHES AND SEIZURES—*Necessity of Search Warrant—Immediate Actual Personal Custody by Some One of the Place or Thing.*—While the search warrant statute (Acts 1920, pp. 516, 517) has a wider scope than the common law rule on the subject, in that it designates other places and things for the search of which search warrants are required, for which the common law does not require search warrants, still there is an attribute common to all of the places and things

for the search of which the statute requires a search warrant, namely, the immediate actual personal custody by some one of the place or thing. The statute and the common law rule aforesaid are alike . in this: It is the protection of the personal liberty and privacy of the citizen which is the prime object; the prevention of the unreasonable invasion of personal rights in the course of the administration of the law; and the protection which is given by the statute to property is purely incidental.

Error to a judgment of the Circuit Court of Princess Anne county, in an action of trespass on the case. Judgment for defendant. Plaintiff assigns error.

*Affirmed.*

This is an action of trespass on the case instituted by the plaintiff in error, McClannan, the tenant of a farm in Princess Anne county (who will be hereinafter referred to as plaintiff), against the defendants in error (who were special police officers appointed by the court under section 4797 of the Code, and who will be hereinafter referred to as the defendants, or as the defendant officers), seeking to recover compensatory and punitive damages of the defendants for injury to the health of the wife of the plaintiff, to the plaintiff's credit and character and to the land itself, caused, as alleged, by the unlawful entry of the defendants upon said farm searching for an illegal still, without a search warrant, and without the consent of the plaintiff, and by their wanton and malicious conduct while there, consisting, as alleged, of the disorderly conduct of making a great noise and disturbance on said farm by firing off guns and revolvers and doing other acts by which the plaintiff and his family were at the time greatly annoyed and disturbed and the plaintiff's wife was frightened and made sick.

There was a trial by jury which resulted in a verdict for the defendants, upon which the judgment under review was accordingly entered, and the plaintiff assigns error.

Of the evidence it is, in general, sufficient to say that the jury were fully warranted in finding in accordance therewith that no substantial damage was occasioned the plaintiff by the conduct of the defendant officers, and the case turns upon whether the plaintiff was entitled to recover punitive or at least nominal damages.

Upon the latter subject the material facts, shown by the evidence without conflict, are as follows:

About a year before the trial of the instant case officers found and destroyed a still on the said farm in the woods on the back part of it, for possession or operation of which, however, there was no prosecution of the plaintiff.

A short time prior to the entry of the defendant officers upon the farm occupied by the plaintiff, the officers received information that there was an illegal still in operation in the thicket or woods or swamp back of the plaintiff's residence. This thicket or the woods and swamp extended back on some adjoining land also, under different ownership from that of the farm occupied by the plaintiff. On a certain day in March, in the day time, the defendant officers, without knowing just where the boundary lines of the lands were, and, indeed, not thinking about the ownership of the land at all or that there would be any objection to their going on the land for the purpose they had in view, entered and searched the thicket, woods and swamp aforesaid, in the effort to find the illegal still which they had been informed as aforesaid was there. They found four or five places where stills had been, one bearing evidence of having been as recently removed as within a week, the others

seeming to have been removed a month or two, or more, it not appearing, however, that any of such stills had been on the farm in question, except the one which had been found there, as aforesaid, about a year before the trial. The defendant officers became separated in the swamp, and one of them came out of the woods and sat down on the railroad track, off of the land of said farm, and, after waiting there for about an hour for his companions, fired a pistol shot, which was the signal agreed upon for them to get together. This shot was answered by a pistol shot which was fired by another of the defendant officers down in the woods, about fifty or seventy-five yards from the edge of the woods nearest to the dwelling house of the plaintiff, and about two hundred and fifty or two hundred and seventy-five yards from such house. These were the only shots fired by the defendant officers and the only conduct on their part that could be relied on by the plaintiff as being disorderly. The defendant who fired the last mentioned shot thereupon came out to the edge of the woods, which was about two hundred yards from the said dwelling house, and walked along the edge of the field of the said farm, which adjoined the woods, until he got off the farm and thence joined his companions; he being the only one of the defendants who came within sight of the dwelling house, so far as appears in evidence, and he at no time went within the curtilage or nearer than two hundred yards of the house.

On the subject of search warrants, there was in force in this State at the time the alleged cause of action in this case arose, in addition to the common law, the following constitutional and statutory provisions:

Section 10 of the Virginia Constitution, which is as follows:

"Section 10—General warrants of search or seizure

prohibited.   That general warrants, whereby an officer or messenger may be commanded to search suspected places without evidence of a fact committed, or to seize any person or persons not named, or whose offense is not particularly described and supported by evidence, are grievous and oppressive and ought not to be granted."

Acts 1920, pages 516, 517, which, so far as material, is as follows:

"Section 4.   It shall be unlawful for any officer of the law   *   *   to search any house, place, vehicle, baggage or thing, except by virtue of and under a warrant issued by the proper officer.   Any officer   *   *   *   violating the provisions of this section shall be liable to the person aggrieved thereby in both compensatory and punitive damages.   *   *   *

"Provided, however, any officer empowered to enforce the game laws and the laws with reference to intoxicating liquors may without a search warrant enter for the purpose of police inspection any freight yard or room, passenger depot, baggage room or warehouse, storage room or warehouse, train, baggage car, passenger car, express car, Pullman car, freight car, boat or other vehicle of any common carrier, boat, automobile or other vehicle; but nothing in this proviso contained shall be construed to permit a search of any occupied berth or compartment on any passenger car or boat or of any baggage, bag, trunk, box or other closed container without a search warrant."

The action of the trial court, with respect to the instructions, was as follows:

"Plaintiff's Instruction No. 1.   The court instructs the jury that every unauthorized entry on land of another is a trespass from which it will be presumed that an injury resulted, even if it was no more than the trampling of the herbage and if they believe from the

evidence in this case that the defendants entered on land in the possession of the plaintiff without any authority, they should find for the plaintiff."

"Plaintiff's Instruction No. 2.    The court further instructs the jury that if they believe from the evidence that the defendants, without authority—that is, without any warrant directing them to do so, entered upon the lands of the plaintiff searching for ardent spirits or illegal stills, and while there fired off guns and revolvers, thereby disturbing and frightening members of the plaintiff's family, they should find for the plaintiff, and in estimating his damages they may take into consideration the injury to said property, injury to the feelings of the plaintiff, and any injury to his reputation that may have resulted therefrom; and if the jury further believe that the defendants in doing said acts acted wilfully and wantonly, or in reckless disregard of the rights of the plaintiff, they may, in addition to. the actual damages awarded said plaintiff, award punitive damages against the defendants, that is, such damages as will make an example for the public good and teach other persons not to offend in a like manner." .

The court granted plaintiff's instruction No. 1 hereinabove set forth as offered, but refused to grant instruction No. 2 for the plaintiff as hereinabove set forth, as same was offered, and amended same so as to read as follows, and as amended gave same to the jury:

"Plaintiff's Instruction No. 2.    The court instructs the jury that if they believe from the evidence that the defendants entered upon the lands of the plaintiff searching for ardent spirits or illegal stills, and while there acted in a disorderly manner thereby disturbing and frightening members of the plaintiff's family, they should find for the plaintiff, and in estimating his damages they may take into consideration the injury to said

property, injury to the feelings of the plaintiff, and any injury to his reputation that may have resulted therefrom; and if the jury further believe that the defendants in doing said acts acted wilfully and wantonly, or in reckless disregard of the rights of the plaintiff, they may, in addition to the actual damages awarded said plaintiff, award punitive damages against the defendants, that is, such damages as will make an example for the public good and teach other persons not to offend in a like manner."

And the defendants at the same time moved the court to instruct the jury as follows:

"Defendant's Instructions. The court instructs the jury that if they believe from the evidence that the defendants were duly qualified officers of the law and that they believed that the law was being violated in the woods of the plaintiff, they were justified in going on the land of the plaintiff, and the jury must find for the defendants unless they further believe from the evidence that the defendants by grossly wanton and negligent acts caused the plaintiff damage."

This instruction was accordingly given over the objection of the plaintiff.

*N. T. Green*, for the plaintiff in error.

*E. J. Smith* and *Thomas Whitehead*, for the defendants in error.

Sims, J., after making the foregoing statement, delivered the following opinion of the court.

[1] 1. It is true, of course, that unless the defendants' entry upon the farm of the plaintiff was lawful, because of the authority conferred upon them by law by reason

of their official positions, and the quest they were upon, they were trespassers and liable for nominal damages at least.    26 R. C. L., sec. 10, p. 938; 38 Cyc. 995-6.

[2] 2. It is also true that even if the entry of the defendants was lawful, if, after the entry, they, in their conduct, exceeded their authority, by doing some act which they had no right to do, the law will consider them as trespassers *ab initio*.    26 R. C. L., sec. 18, p. 943.

[3] 3. Moreover, if while on the premises the defendants were guilty of disorderly conduct injurious to the plaintiff, which was malicious or wanton, or conduct in violation of the search warrant statute cited and quoted preceding this opinion, they were liable for punitive damages.    The liability, in the former case, would be a common law liability; in the latter, a liability imposed by the terms of such statute for acting without a search warrant.

We will here say that the jury were plainly warranted in finding from the evidence that there was no common law liability upon the defendants for malicious or wanton conduct.

The decision of the instant case therefore turns upon this single question.

[4, 5] 4. Did the defendant officers have the lawful right, without a search warrant, and without the consent of the owner or tenant of the land (he offering no actual resistance or objection at the time thereto), to enter upon a part of the farm in question away from the dwelling house and curtilage, in the exercise of the duty of police inspection imposed upon them by law—*i. e.*, to ascertain if the illegal still was where they had been informed it was hidden on the farm, away from the dwelling house and curtilage?

The question must be answered in the affirmative.

[6] The statute (section 5797 of the Code) under which the defendant officers were appointed, provides that "such person or persons shall be conservators of the peace in their respective counties." Section 4802, with respect to the same officers, so far as material, provides as follows: "Their duties and powers.—It shall be the duty of said police to apprehend and carry before a justice, to be dealt with according to law, all persons whom they   *   *   *   have cause to suspect have violated, or intend to violate any law of the State; * *." In the prohibition law, Acts 1918, section 21½, page 594, there is this provision: "All stills in this State not registered under a permit as herein required   *   *   are hereby declared contraband and shall be subject to seizure by any officer charged with the enforcement of the law, which officer   *   *   *   shall forthwith notify the commissioner and turn over to him all still caps, worms, tubs, fermenters and other appliances to be disposed of as required by this act."

The office of conservators of the peace is a very ancient one, and their common law authority to make police inspection, without a search warrant, extends throughout the territory for which they are elected or appointed, as the case may be, in private as well as in public places, and upon private as well as public property, unless inhibited from entry for such purpose without a search warrant by some rule of the common law, or by the Constitution, or by statute. It was provided in Edw. III, ch. 15, that "in every shire of the realm good men and lawful, which are no maintainers of evil nor barretors in the county, shall be assigned to keep the peace;" of which it was said that this "was as much as to say that in every shire the King himself should place special eyes and watches over the   *   people, that should be both willing and wise to foresee, and should

be also *enabled with meet authority* to repress all intention of uproar and force *even in the first seed thereof and before that it should grow up to any offer of danger.*" (Italics supplied.)    Lambard Book 1, chap. 4; 2 Hale's P. C. (note 1) 42.    This was but declaratory of the common law authority of conservators of the peace. That authority could not have been at all efficiently exercised if a search warrant had had to be first obtained before any entry could have been lawfully made upon any land in private tenure.

[7] And while the duties and powers of police officers are, in modern times, largely defined and regulated by statute, it is elementary that the common law may be relied on to supply many incidents (of their powers), "and others are based on what may be necessarily implied from the powers expressly conferred."    22 R. C. L., sec. 114, p. 455.

So that it is plain that the common law and the sections of Code and of the prohibition law last above quoted (which are but declaratory of the common law as applicable in such cases) gave the defendant officers the legal authority to make the entry upon the land in question for the purpose in question, without a search warrant, unless there is some rule of the common law, or Constitution or statute which inhibited them from so doing.

[8] The position is taken for the plaintiff, which is earnestly urged, that the officers in such a case as this had no legal authority, without a search warrant, to enter upon any  privately owned land, however remote from the dwelling house or curtilage, and although not in the immediate actual possession of any one, because a search warrant is in such case required, both (a), by section 10 of the Virginia Constitution and (b), by the statute aforesaid contained in Acts 1920, pp. 516, 517,

in order to render such entry lawful.   We will first consider the position (a).

(a).  To sustain the position (a) just mentioned the following authorities are cited: *Entick* v. *Carrington*, 19 Howell's St. Trials 1029; *Boyd* v. *U. S.*, 116 U. S. 616, 6 Sup. Ct. 524, 29 L. Ed. 746; *Weeks* v. *U. S.*, 232 U. S. 383, 34 Sup. Ct. 341, 58 L. Ed. 652, L. R. A. 1915 B, 834, Ann. Cas. 1915 C, 1177; *People* v. *Marxhausen*, 204 Mich. 559, 171 N. W. 557, 3 A. L. R. 1505; 2 Watson on the Constitution, p. 1415 (see also *Idem*. pp. 1417, 1418, 1419, 1424); *Gouled* v. *U. S.*, 255 U. S. 298, 41 Sup. Ct. Rep. p. 261, 65 L. Ed. 647 (advance sheets); Black's Const. Law, sec. 7, p. 9 (see also *Idem*. pp. 606, 607, 608, 612); Anonymous, Minor (Ala.), 52, 12 Am. Dec. 31; *People* v. *Ross*, 19 Cal. App. 469, 126 Pac. 375; *Delafoile* v. *State*, 54 N. J. Law, 381, 24 Atl. 557, 16 L. R. A. 500; *Commonwealth* v. *Eyre* (Pa.), 1 S. & R. 347.

[9] The only entry by officers which is held by these authorities to be unlawful is that which occurs when the officers are making an "unreasonable" search or seizure. Such a search or seizure is forbidden by the common law, and by the fourth amendment to the Constitution of the United States (which, however, does not extend to the State governments nor apply to proceedings in the State courts), which is but declaratory of the common law on the subject.

[10] In Virginia we have no constitutional provision on this subject, except section 10, which merely forbids searches and seizures under "general warrants;" not searches and seizures without any warrant.

[11] What is meant by "general warrants" in such section of our State Constitution is well settled historically and judicially, as appears from the above mentioned authorities.   And as we held in *Zimmerman* v. *Town of Bedford*, 134 Va. 787, 115 S. E. 362; such war-

rants are search warrants issued "(1) without any evidence of fact furnished previously to their issuance, or (2) (which do) not designate any specific thing or person to be seized, or (3) (do not) particularly describe the offense claimed to have been committed." See to same effect Black's Const. Law, page 612. Such search warrants, as appears from the same authorities above mentioned, would, if valid, authorize "unreasonable" searches and seizures; and it is for that reason that they are condemned by section 10 of our State Constitution aforesaid. In so doing, this section merely adopts and makes unchangeable by the legislature the common law on the subject, to that extent, but no further.

It is manifest, therefore, that since the entry in the instant case was not under any search warrant at all, section 10 of the Virginia Constitution has no direct application to the case. It has an indirect application, however, in its enunciation in part of the common rule on the subject.

[12] We have now, therefore, to consider whether the common law condemns such an entry as that involved in the instant case, without a search warrant. It does not do so unless the entry is made in the course of an "unreasonable" search. And, as the authorities show, what is meant by an "unreasonable" search is a search which is unreasonably oppressive in its invasion of the liberty of the citizen.

[13] It is well understood that the authorities above cited, involving the subject, hold that searches and seizures under "general warrants" are "unreasonable" solely because, under their general terms, ministerial officers might search private homes and seize private papers and persons indiscriminately, unrestrained by previous judicial sanction. And the holding is precisely the same with respect to searches and seizures by officers without a search warrant. It is the personal

and political liberty of the citizen, especially the privacy of his home and his papers, which is sought to be protected by the common law rule against "unreasonable" search and seizure and which would be considered unreasonably violated if certain searches and seizures were permitted without search warrant, or under general search warrants.

We find no indication in any of the authorities that protection of the title, or the constructive possession of property, is the controlling object of the common law rule against unreasonable searches and seizures. No right of property is primarily intended to be protected thereby, and certain property rights, not inclusive of those involved in the instant case, are incidently protected only because they are immediately incidental to and inseparable from the enjoyment of the personal rights aforesaid.

This is true of all of the decisions aforesaid cited and relied on for the plaintiff. *Anonymous, supra,* involved the search of a dwelling house without a warrant; *People* v. *Ross, supra,* a dwelling house and curtilage, without a warrant; *Delafoile* v. *State, supra,* a hotel (the home of the landlord and wife) and assault upon the landlord's wife, without a warrant; *Commonwealth* v. *Eyre, supra,* the curtilage, without a warrant; *People* v. *Marxhausen, supra,* a dwelling house, without a warrant; *Boyd* v. *U. S., supra,* letters and private documents ordered to be produced; *Entick* v. *Carrington, supra,* private papers seized in a dwelling house, under a "general warrant;" *Gouled* v. *U. S., supra,* private papers seized and taken from an office, without a warrant.

In *Faulkner* v. *Alderson,* Gilm. (21 Va.) 221, cited for the plaintiff, the entry was by the landlord, not an officer, but the entry originally lawful became unlawful *ab initio,* under settled principles, because of the subse-

quent unlawful conduct of the landlord in breaking into the dwelling house, etc.

[14, 15] All of the authorities concur in the view that only "unreasonable" searches and seizures are forbidden by the common law rule aforesaid, or by the Federal and State constitutional provisions on the same subject; that "unreasonable" searches and seizures without a search warrant are not thereby forbidden; and that what is a reasonable or an unreasonable search or seizure is "purely a judicial question and in determining it the court must look to all the circumstances." 2 Watson on the Constitution, pp. 1417, 1418. See to same effect Black's Const. Law, p. 612; *Mason* v. *Rollins*, 2 Biss. 99, 102, Fed. Cas. No. 9,252; *Boyd* v. *U. S.*, *supra*; *Haywood* v. *U. S.* (C. C. A.), 268 Fed. 795, 803; *U. S.* v. *Bookbinder* (D. C.), 278 Fed. 216, 218; *O'Connor* v. *U. S.* (D. C.), 281 Fed. 396, 398-9; *Haywood* v. *U. S.* (C. C. A.), 268 Fed. 795, 803-4.

In the case last cited, this is said:

"Not all searches and seizures are forbidden. Consider first the character of the property that may be seized. It never has been deemed unreasonable to hunt for and take stolen property, smuggled goods, implements of crime, and the like. * * * Consider next the person whose privacy is invaded. * * *"

The same rule there announced has been uniformly held to apply to contraband (such as was the illegal still for which the defendants in the instant case were searching), *Elrod* v. *Moss*, *supra*, ([C. C. A.], 278 Fed. 123); and no privacy of the plaintiff was invaded.

It is too manifest for further elaboration that the search, without a warrant, of the plaintiff's premises, remote from his home and curtilage, and not even in his personal presence, was not an "unreasonable" search, and hence was not forbidden by the common law.

[16] The sole question, therefore, which remains for our decision is that presented by the position (b) taken for the plaintiff, as above stated, namely:

(b). Did the statute concerning search warrants (Acts 1920, pages 516, 517) require the defendant officers to obtain a search warrant before making the entry on the land of the plaintiff, in the aforesaid locality, remote from his dwelling and curtilage, and not in his presence or immediate actual possession, for the purpose of searching for the illegal still which they "had cause to suspect" was there?

The question must be answered in the negative.

[17] In the opinion of the United States Circuit Court of Appeals for this circuit delivered by Judge Woods in *Elrod* v. *Moss*, 278 Fed. at page 129, this is said:

"* * every constitutional or statutory provision must be construed with the purpose of giving effect, if possible, to every other constitutional or statutory provision, and in view of new conditions and circumstances in the progress of the nation and the State" (citing Supreme Court decisions). "Hence the provisions of Federal and State Constitutions forbidding unreasonable searches must be construed in the light of the constitutional provision against the sale, manufacture and transportation of intoxicating liquors."

The same is equally true of the provisions of the search warrant statute under consideration, and they must be construed in the light of the aforesaid provisions of section 21½ of the prohibition law of the State authorizing the seizure of illegal stills without a warrant, and in the light of the common law and the statutory authority aforesaid conferred upon such officers as the defendants.

So construing such search warrant statute we are of

opinion that its provisions have no application to the search by the officers of such a place as that involved in the instant case.

[18] It is plain, when the whole statute is read, that while it has a wider scope than the common law rule on the subject, in that it designates other places and things for the search of which search warrants are thereby required, for which the common law does not require search warrants; still, it is apparent that an attribute, not present in the instant case, is common to all of the places and things for the search of which the statute requires a search warrant, namely: the immediate actual personal custody by some one of the place or thing. The statute and the common law rule aforesaid are alike in this; it is the protection of the personal liberty and privacy of the citizen which is the prime object; the prevention of the unreasonable invasion of personal rights in the course of the administration of the law; and the protection which is given by the statute to property is purely incidental.

The word "house" used in the statute, does not exhaust the class to which it refers, as is argued for the plaintiff. And plainly, in the light of the common law rule aforesaid, the words "place" and "thing" mean other places and things of like character, with respect to being in the immediate personal custody of some one, so that the entry thereon or search thereof would violate the personal liberty and privacy aforesaid. Hence the cases of *Jones* v. *State*, 104 Ark. 261, 149 S. W. 56, Ann. Cas. 1914C, 302, and *American Ice Co.* v. *Fitzhugh*, 128 Md. 382, 97 Atl. 999, Ann. Cas. 1917D, 33, relied on for plaintiff on this subject, have no controlling application.

The case must be affirmed.

*Affirmed.*