## CIRCUIT COURT OF FREDERICK COUNTY

Commonwealth of Virginia

v.

Robert Lee Carper

February 16, 1988

Case No. Cr. 5492

By JUDGE ROBERT K. WOLTZ

The issue for decision is the validity of a search which resulted in the discovery and seizure of what is alleged to be cocaine. The defendant has been indicted for possession of cocaine with the intent to distribute. He filed a motion to suppress evidence of the alleged contraband on the ground that the search for and seizure of it were illegal. I hold that the motion for suppression of this evidence should be denied.

The police had reason to believe that the defendant was in possession of illegal drugs and also information he was wont to carry them in his passenger car. An officer applied to a magistrate for a search warrant, which was issued, for illegal drugs, drug paraphernalia and an item of stolen property. The warrant authorized the search of a "house," with some detail as to its description and location. It further covered "the person of Robert Lee Carper who resides at the above residence." The validity of the search warrant is not questioned.

The house is in a rural area located on a tract of land at the intersection of a primary and a secondary public highway. The house faces on the secondary highway though a driveway leads to it from the primary route. The

evidence does not disclose any fences on the tract or other buildings located there except a small one approximately one hundred fifty feet from the house. This building is enclosed on three sides, the fourth side being entirely open and fronting on and being about ten feet distant from the secondary route. In it was a licensed pickup truck the front of which faced toward the road and which was determined before any search of it was made to be the property of the defendant.

Armed with the warrant a number of officers proceeded to the location described in it and made a search of the residence, seizing certain items found in the course of the search there. Then an officer trained and experienced in the use of dogs used to locate contraband drugs by smell took such a dog to the garage building and allowed it to sniff around the truck. The garage was apparently rather small as evidence shows close quarters were encountered in performing this function. The dog indicated some interest in the pickup truck and the officer opened one of its doors to allow the dog access to its interior. The canine exhibited strong interest in the area of the ashtray. The officer removed the ashtray and on further examination found hidden behind the ashtray receptacle a bank money bag in which was a plastic bag in which were a number of smaller plastic bags containing a substance resembling cocaine. These particular items were seized and the defendant's motion seeks to suppress them as evidence.

The parties have cited a number of cases dealing with warrantless searches of motor vehicles, the presence of exigent circumstances, the existence of probable cause to search, sniffs for contraband by dogs, distinction between motor vehicles on highways and public property as opposed to private property and the like. In the view I take these cases are mostly inapplicable as the search here was either of the curtilage pursuant to a valid warrant or was a warrantless search under a branch of the open fields doctrine.

### I. *Warrant Search*

At oral argument while concentrating on the points of law mentioned above the defendant did argue that the evidence did not disclose what the curtilage was and in

any event this warrant did not cover the curtilage. I disagree. The warrant describes the thing to be searched as a house. The warrant also covers the person of the defendant "who resides at the above residence." Thus the house is not merely any kind of house but is expressly stated to be the defendant's residence, his mansion house, his place of habitation, his dwelling house.

The house described for search is therefore the dwelling · house of the defendant. In law, however, the dwelling house is not limited solely to the area beneath the roof of the dwelling:

> We know of no analogy in the law for the construction of this language ["his home," "his own home" and "home"], except such as is found in the common and statute law referring to arson, burglary and to homicide and assault cases, where the prisoner claims to have committed the alleged crime in self defense after having retreated to his castle, or his home. As construed by the courts from the earliest to the latest times, the words "dwelling" or "dwelling house" have been construed to include not only the main house, but all of the cluster of buildings convenient for the occupants of the premises, generally described as "within the curtilage." *Bare v. Commonwealth*, 122 Va. 783, 793 (1917).

That case continues by quoting several highly regarded older authorities at pages 793 and 794. The dwelling house includes outhouses even though not under the same roof or contiguous to the main house, and thus outhouses appurtenant and subservient to the main house and which are within the curtilage are considered part of the dwelling house. Such a building occupied by the same owner as the main house when not within a common fence presents a question of fact whether it is part and parcel of the dwelling house. There are numerous definitions of the term in the law and that contained in *Bare* at page 795 is as follows:

> The curtilage of a dwelling house is a space necessary and convenient, habitually

used for family purposes and the carrying on of domestic employment, the yard, garden or field which is near to and used in connection with the dwelling.

Here the evidence showed that there were no fences on the property and no evidence of other obstructions between the dwelling house and the three-sided garage which was occupied by a licensed motor vehicle and registered in the name of the occupant of the dwelling. Smokehouses, chicken houses, stables, carriage houses and other buildings closely associated in "necessary and convenient" use with the mansion house have largely disappeared from urban areas and are no longer so prevalent in rural areas. The one outbuilding appurtenant to use of the dwelling which perhaps exists more frequently than any other building is the garage, whether used for its intended purpose as a shelter for motor vehicles or as is often the case a catchall domestic storage house.

Although the garage in question was one hundred fifty feet from the main house it appears to be the only garage on the premises and was being actively used as such. Though the spacial separation between house and garage is here somewhat greater than ordinary, a more important factor is the intimate usage relationship between the two structures. As finder of fact I have little difficulty in determining that this garage building was part of the curtilage. Consequently it was subject to all the protections and incidents of the criminal law relating to the mansion house itself, including the usually necessary requirement of a warrant for valid search and seizure. Conversely, the garage was as subject to the intrusive force of search and seizure under a valid warrant as the dwelling house itself.

The search warrant in *Kearney v. Commonwealth*, 4 Va. App. 202 (1987), covered "the dwelling including curtilage" located at a specific street address. As a practical matter, the additional phrase may be a helpful authorization or direction to police officers; but as a strict legal matter the added phrase is surplusage or redundant, for the dwelling itself as shown above includes the curtilage.

There are properly limitations on intrusions even under the authority of a valid search warrant. One issued to search for a sawed-off shotgun would not justify those acting under it prying into a jewelry case or other small containers or small recesses. It is common knowledge that contraband drugs can be and often are secreted in small places. I have never seen it advanced that a search which was valid for a specific location did not authorize search of any part of the location or anything within it which might reasonably hold the object searched for, save only vehicle searches under the automobile exception in several relatively recent United States Supreme Court decisions. Even in that situation after some years of elaborate angelic terpsichorean exercises on the point of a pin, that court has concluded in *United States v. Ross*, 456 U.S. 798 (1982), that generally the search of a motor vehicle includes the search of all parts of it and all items and containers in it. This brings the permissible extent of valid motor vehicle searches into line with the law long established with regard to the search of buildings and other places.

Thus under this valid warrant not only could the dwelling house proper be searched and items seized from it, but also included within that term would be the curtilage which in turn included the garage which in turn included the pickup truck housed in it and any parts or contents of that vehicle. For the foregoing reasons the search and seizure of the cocaine was valid under the Fourth Amendment.

## II. *Validity as a Warrantless Search*

If it is assumed that the garage is not a part of the curtilage and so the search a warrantless one, in my opinion the search and seizure are still valid. Nor is it dependent for validity on such niceties as the automobile exception or whether that exception applies only to vehicles on public as opposed to private property, exigent circumstances, etc.; nor on whether a dog sniff in a public place as an airport fails to constitute a search, *see United States v. Place*, 462 U.S. 696 (1983), but would constitute a search in a private place. Under the circumstances of this case the garage from which the

seizure was made if not located within the curtilage must necessarily have been located in an "open field."

Common law rule and federal and state constitutional provisions forbid only unreasonable searches and seizures; they do not forbid "reasonable" searches and seizures without a warrant. *McClannan v. Chaplain*, 136 Va. 1 (1923). "[A]n 'unreasonable' search is a search which is unreasonably oppressive in its invasion of the liberty of the citizen." *Id.*, at 15. In that case police officers without a warrant and without owner's permission entered and searched portions of a farm for a still. Later the owners sued them for trespass. Judgment for the defendant was sustained on the basis no warrant was required for search of private real estate other than the dwelling house or curtilage or land at the time in actual custody of someone. *Accord, Wellford v. Commonwealth*, 227 Va. 297 (1984); *Patler v. Commonwealth*, 211 Va. 448 (1970).

The United States Supreme Court one year later decided what has now become the landmark case of *Hester v. United States*, 265 U.S. 57 (1924). There testimony of revenue officers concerning discovery of moonshine whiskey without benefit of a search warrant was sought to be suppressed on fourth amendment grounds. The court said,

> As to that, it is enough to say that, apart from justification, the special protection accorded by the 4th Amendment to the people in their "persons, houses, papers and effects" is not extended to the open fields. This distinction between the latter and the house is as old as the common law. 4 Bl. Com. 223, 225, 226.

That case recently has been followed by *Oliver v. United States*, 466 U.S. 170 (1984), sustaining a warrantless search of open fields without regard to fences, no trespassing signs or the secluded nature of the place searched, and noting the term "open field" should not be taken too literally. Even if the place where the garage was located is considered an open field obviously that structure itself is not literally an open field. Nevertheless, depending on circumstances it may partake something of the nature of the open field in which it is located.

The Fourth Amendment "protects people, not places." *Katz v. United States*, 389 U.S. 347 (1967). But people are not disembodied spirits at one with the cosmos. They are flesh and blood and their bodies, their material possessions and their daily activities must unavoidably be associated with physical situs. The protections of the liberty of the citizen from unreasonable search and seizure must of necessity relate to protection from unwarranted governmental intrusions into places and things. Thus in recent years the Supreme Court has in Fourth Amendment cases developed in a variety of situations the concept of one's "legitimate expectations of privacy" in places and things, and not merely one's subjective expectations but only those society deems reasonable. *See, e.g., South Dakota v. Opperman*, 428 U.S. 364 (1976); *Smith v. Maryland*, 442 U.S. 735 (1979); *Ross, supra*; *Place, supra*; *Oliver, supra*; *California v. Carney*, 471 U.S. 386 (1985); and *California v. Ciraolo*, 476 U.S. 207 (1986).

The protections afforded a structure and its contents vis-a-vis search and seizure may partake of the degree of protection afforded the situs of a structure. So a gazebo or open-sided picnic shelter located within the curtilage partakes of the protections afforded by the curtilage. The legitimate expectations of privacy in those structures is vastly diminished if not lost when their situs is an open field distant from the dwelling and curtilage.

So it is with the garage in question. As seen above, in the curtilage this building is entitled to the protections afforded the dwelling house itself in respect of warrant requirements for valid search and seizure. Assuming the garage is in an open field that fact alone may reduce the expectations of privacy from governmental intrusion. Additionally and importantly the garage is enclosed on only three sides, the fourth side being open to the elements and without hindrance to ingress and egress or prying eyes. These elements of diminished expectation of privacy are further heightened by the fact that the open side of the building is but ten feet from a public highway. Under such circumstances even subjectively it is difficult to see how the defendant had an expectation of privacy as to this garage and that expectation is not one society would consider reasonable. That being so, the garage itself

is subject to search and seizure without necessity of a warrant and as a consequence so are its contents.[1]

The seeming anomaly concerning different expectations or privacy for this garage depending on its location is quickly answered by the curtilage--open fields dichotomy. Within the curtilage the law itself asserts an expectation of privacy of such degree that an on-site (as opposed to aerial) search generally requires that the search be made pursuant to valid warrant. A structure located in open fields loses the protection afforded by he curtilage and depending on additional circumstances may lose the degree of privacy expectation which requires a warrant as a precondition to a valid search.

In conclusion, the evidence sought to be suppressed will not be. The defendant is in a catch twenty-two situation as the pertinent evidence was either properly seized under a valid search warrant or pursuant to a valid warrantless search.

---

[1] Whether a fully enclosed building is an open field, especially one secured by locks and the like, is or is not validly subject to warrantless search and seizure is expressly excluded from consideration in this opinion.