# CIRCUIT COURT OF THE CITY OF NORFOLK

Wilbur Zarate Llaven
and Cynthia Isabel Zarate Tovilla

    v.

People for the Ethical
Treatment of Animals,
Victoria Carey,
and Jennifer Wood

June 14, 2016

Case No. (Civil) CL15-11874

By Judge Everett A. Martin, Jr.

The plaintiffs allege that on October 18, 2014, Victoria Carey and Jennifer Wood, "agents and representatives" of People for the Ethical Treatment of Animals ("PETA"), entered onto their property, seized their dog, carried her away, and killed her. The complaint sets out three rights of action: conversion, trespass, and intentional infliction of emotional distress. PETA has filed a demurrer with numerous grounds to each.

*Conversion*

The plaintiffs seek $2,000,000 in compensatory damages and $5,000,000 in punitive damages for the taking and killing of the dog. The grounds of PETA's demurrer to this count are: first, the complaint does not state the value of the dog; second, the dog was unlicensed; third, the plaintiffs' recovery is limited to the monetary value of the dog; fourth, punitive damages cannot be recovered for conversion of a dog.

## A. *The Necessity of Alleging Value*

In *Pearpoint v. Henry*, 2 Wash. (2 Va.) 192 (1796), the Court held that the price of the property converted need not be stated in the declaration. Furthermore, Rule 3:2 (c)(ii) requires every complaint requesting an award of money damages to contain an *ad damnum* clause. That is sufficient to put the defendant on notice of what is being sought. I overrule the demurrer on this ground.

## B. *The Failure To Have a License for the Dog*

There are two reasons to overrule this ground of the demurrer. First, the absence of a license is not stated in the complaint but, rather, in a factual narrative PETA includes in its brief. I may not consider this narrative in ruling on the demurrer. Second, the predecessor statutes to Code of Virginia ("Code") § 3.2-6585, about which much more later, originally provided that a dog had to be properly licensed as a condition of being deemed personal property. See Code (1887) § 3711; Va. Acts 1912, p. 499, § 10; Code (1919) § 2324; Va. Acts 1924, p. 255; Code (1930) § 3305(69); former Code (1950) § 29-193. However, by 1966 Acts of Assembly, c. 428, the General Assembly deleted the licensure requirement, so the plaintiffs need not now plead it.

## C. *Compensatory Damages Are Limited to the Monetary Value of the Dog*

The plaintiffs concede that, under Code § 3.2-6585 and *Kondaurov v. Kerdasha*, 271 Va. 646, 629 S.E.2d 181 (2006), they could only recover the value of a dog if the killing had been negligent, but they claim they may also recover harm to feelings as the killing here was intentional. They also contend this issue ought not be resolved on demurrer.

It has been the practice of the judges of this court for many years to resolve certain damages claims on demurrer, *e.g.*, the right of a plaintiff to seek punitive damages for what is ordinary negligence and a party's right to seek attorney's fees in the absence of statute, contract, or precedent. This is a similar issue; like those it is one of law. The issue is joined, and I see no reason to delay its resolution.

I am aware of no precedent establishing a distinction between the measure of compensatory damages for damage to property from negligence or willful act. The cases the plaintiffs rely on do not establish the distinction.

In *Kondaurov, supra,* the Court merely noted in footnote 4 that four states allowed a recovery of damages for emotional distress for the willful killing of an animal. It did not state or imply that Virginia was among them. 271 Va. at 657, 629 S.E.2d at 186.

In *Perk v. Vector Resources Group,* 253 Va. 310, 485 S.E.2d 140 (1997), the plaintiff's motion for judgment contained a claim for conversion of computer programs, databases, and the like. The plaintiff claimed a loss of the value of the items, his efforts in creating them, and future profits. The Court held "whether these items had value to [the plaintiff] aside from his contractual obligations and professional services to. [the defendant]" were matters of proof not to be decided on demurrer. 253 Va. at 315, 485 S.E.2d at 143. The Court did not hold the plaintiff could recover emotional damages.

In *Sea-Land Service, Inc. v. O'Neal,* 224 Va. 343, 297 S.E.2d 647 (1982), an action for breach of contract and fraud, the damages for embarrassment or humiliation were for injury to the plaintiff herself, not to her property.

In *Chesapeake & Ohio Ry. v. May,* 120 Va. 790, 92 S.E. 801 (1917), the plaintiffs sued for the destruction of their home and other property by a fire caused by a passing train. Thus it was an action for negligence. Among the property destroyed were two family portraits having sentimental value. The court instructed the jury they could not "take into consideration any sentimental value attached to it by the owners or any peculiar value which they may have attached to the property by reason of association or the like." 120 Va. at 797, 92 S.E. at 803. The Supreme Court approved this instruction.

Finally, in *Peshine v. Shepperson,* 17 Gratt. (58 Va.) 472 (1867), the plaintiff, a merchant, sued the defendants for taking away his goods. He sought damages greater than the value of the goods. As for damages exceeding the value of the goods, the Court discussed both compensatory damages, *i.e.,* the injury of the credit and business standing of a merchant and diminution of his profits, and punitive damages when the wrong is accompanied by circumstances of aggravation. The Court did not endorse an award of emotional damages to the plaintiff.

I sustain the demurrer to the extent the plaintiffs' claim compensatory damages for conversion in excess of the value of the dog.

## D. *Punitive Damages for Conversion of a Dog*

The Supreme Court of Virginia has approved of punitive damages for conversion in at least three cases. *Peshine, supra* (inventory); *Peacock Buick v. Durkin,* 221 Va. 1133, 277 S.E.2d 225 (1981) (automobile); *Condominium Services, Inc. v. First Owner's Assoc.,* 281 Va. 561, 709 S.E.2d 163 (2011) (money). PETA, however, claims an award of punitive

damages for the conversion of a dog is not allowed by either the common law or statute.

E. *The Common Law*

In discussing the damages that could be recovered for conversion, Blackstone wrote:

> As to the damage that may be offered to things personal, while in the possession of the owner, as hunting a man's deer, shooting his dogs, poisoning his cattle, or in anywise taking from the value of any of his chattels, or making them in a worse condition than before, these are injuries too obvious to need explication. . . . In both of which suits [trespass *vi et armis* and trespass on the case] the plaintiff shall recover damages, in proportion to the injury which he proves that his property has sustained.

3 W. Blackstone, *Commentaries on the Laws of England* (*"Commentaries"*) 153-43 (1768). In *dicta* in two criminal cases involving charges of killing of a dog, the General Court and Supreme Court of Virginia held that an indictment for malicious mischief would not lie, but that the owner had a civil right of action for injuries to the dog. *Maclin's Case*, 3 Leigh (30 Va.) 809 (1831); *Davis v. Commonwealth*, 17 Gratt. (58 Va.) 617 (1867). President Moncure wrote in *Davis*:

> It was well settled at common law that, while, on the one hand, a dog is such property as that its owner may maintain a civil action for the unlawful conversion, destruction, or injury thereof by another person, it is not such property as to be subject of larceny. And this distinction in regard to the nature of this subject has never been altered by statute, but continues still to prevail, notwithstanding the reason for the distinction has long since ceased.

17 Gratt. at 618. In *Breedlove v. Hardy*, 132 Va. 11, 110 S.E. 358 (1922), the Court affirmed this statement in a civil action seeking the value of two dogs alleged to have been deliberately killed by the defendant to protect his fowl. There was no claim for or mention of punitive damages.

There is a reported circuit court case holding a dog owner's only civil remedy at common law was the recovery of the animal. *Layton v. Brown*, 6 Va. Law Reg., N.S. 179, 13 Va. Cir. 542 (Stafford County 1920). This is inconsistent with the three decisions cited above. Furthermore, counsel for the parties agreed this was the law so perhaps the judge did not question it.

No other Virginia or English authority has been cited, nor have I found any, that holds the remedy for conversion of a dog differs from that for

conversion of other personal property. When Blackstone and other writers refer to an owner's right in his dog to be "qualified or base property," 4 *Commentaries* 236 (1769); 10 Va. Law Reg. 460-61 (1904), they refer to the lack of any criminal remedy for the theft of or injury to the animal, and a dog's exemption from distress. 3 *Commentaries* 7. Exemption from distress, to me, elevates the status of a dog. A tenant might lose his furniture, plate, and clothing to his landlord, but he keeps his hound.

The only English case I have found that gives any guidance on the question is *Sandys v. Hodgson*, 10 Ad. & E. 472, 113 Eng. Rep. 179 (Q.B. 1839), in which Hodgson brought separate actions for trover of the same dog against Sandys and Dowbiggen. He lost against Sandys. He prevailed against Dowbiggen and received a verdict for £50, a sizeable sum at that time. The verdict was to be reduced to one shilling if Dowbiggen returned the dog by a certain day. Dowbiggen timely returned the dog and paid a shilling, and he claimed the dog on behalf of Sandys. Hodgson refused to turn over the dog, so Sandys filed an action of trover against Hodgson. The verdict was for Sandys, and, in affirming the verdict, Chief Justice Denman observed:

> Hodgson may have entitled himself to recover the dog against Dowbiggen; and it would then be just to enter a verdict for what may be the whole amount of the damages laid in the declaration, called penal damages, to compel restitution: but the fact of conversion may have entitled Hodgson to no more damages than the 1s. actually paid.

If the common law did not allow punitive damages for the conversion of a dog, one would expect the Chief Justice of England to have commented differently on Hodgson's verdict.

The appellate courts of several states have upheld awards of punitive damages for the willful killing or injuring of a dog. *Parker v. Mise*, 27 Ala. 480 (1855); *Wright v. Clark*, 50 Vt. 130 (1877); *Heiligmann v. Rose*, 81 Tex. 222, 16 S.W. 931 (1891); *Hopen v. Walker*, 96 Mich. 236, 55 N.W. 657 (1893); *Rimbaud v. Beiermeister*, 168 A.D. 596, 154 N.Y.S. 333 (1915); *LaPorte v. Associated Independents, Inc.*, 163 So. 2d 267 (Fla. 1964); *Propes v. Griffith*, 25 S.W.3d 544 (Mo. App. 2000). Another court took away an award of punitive damages because of the evidence in the case, not because the law prohibited the award. *Williams v. Spinola*, 50 Ore. App. 87, 622 P.2d 322 (1981).

I conclude the common law of Virginia allows the recovery of punitive damages for the killing of a dog with actual malice or in a conscious disregard of the plaintiff's right.

F. *The Statute*

An early version of what is now Code § 3.2-6585 provided:

> All dogs in this State which have been assessed with a license tax and upon which the said license is not delinquent, shall be deemed personal property, and may be the subject of larceny and malicious or unlawful trespass.

Va. Acts 1912, p. 499. The principal purpose of this enactment would have been to overrule *Maclin's Case* and *Davis* with respect to licensed dogs.

In 1924, the General Assembly added "and the owner thereof may maintain any action for injury thereto, or unlawful detention thereof, as in the case of other personal property." Va. Acts 1924, p. 255. The purpose of this enactment might have been to limit common law civil remedies to licensed dogs. The 1966 amendment mentioned above would have rendered this addition merely declaratory of the common law. In 1930, the General Assembly added the original version of the present third sentence, which does not materially differ from the present version.

The statute, as pertinent to this case, now provides:

> All dogs . . . shall be deemed personal property and may be the subject of larceny and malicious or unlawful trespass. Owners, as defined in § 3.2-6500, may maintain any action for the killing of any such animals . . . as in the case of other personal property. The owner of any dog . . . that is . . . killed contrary to the provisions of this chapter by any person shall be entitled to recover the value thereof . . . in an appropriate action at law from such person.

Does the third sentence merely limit the compensatory damages that may be recovered or, as PETA claims, does it also bar the recovery of punitive damages? "The common law is not to be considered as altered or changed by statute unless the legislative intent be plainly manifested." *Hannabass v. Ryan*, 164 Va. 519, 525, 180 S.E. 416, 418 (1935). Statutes in derogation of the common law must be strictly construed. A statutory change in the common law is limited to what is expressly stated or necessarily implied, because there is a presumption no change was intended. *Mitchell v. Counts*, 259 Va. 179, 186, 523 S.E.2d 246, 250 (2000).

The value of the property is the general measure of compensatory damages for conversion. *Straley v. Fisher*, 176 Va. 163, 10 S.E.2d 551 (1940). At the time of the addition of the third sentence, courts across the country would award different measures of compensatory damages for conversion, other than or in addition to the value of the property, including loss of use, increase on the property, mental anguish, and damages proximately caused.

65 *Corpus Juris*, "Trover and Conversion," §§ 254-263 (1933). The statute would bar these. *Kondaurov, supra.*

The statute is silent on punitive damages. The General Assembly knows how to prohibit the recovery of punitive damages. Code §§ 8.01-25 ("punitive damages shall not be awarded"); 8.01-195.3 ("neither the Commonwealth nor any transportation district shall be held liable for . . . punitive damages"); 46.2-1527.2 ("shall not include any punitive damages"); 51.5-46 ("Punitive damages shall not be awarded"); 55-436 ("punitive damages may not be awarded except as provided. . . .").

I do not find the General Assembly plainly manifested an intent to bar the recovery of punitive damages for the malicious killing of a dog. The statute can be construed, without straining, to cover only compensatory damages. If I take a sledgehammer to my neighbor's car, he can sue me for both compensatory and punitive damages. Did the General Assembly intend to protect me from a claim for punitive damages if I take a sledgehammer to my neighbor's dog? I cannot believe it did. I overrule the demurrer to punitive damages for conversion.

## Trespass

PETA demurs to this count on five grounds: first, the plaintiffs fail to plead that Carey did not have permission to come onto the porch; second, the plaintiffs expressly asked PETA to come onto their property to remove feral cats; third, there was an implied license to enter onto the plaintiffs' property; fourth, the complaint does not allege that PETA interfered with the plaintiffs' use of the porch; fifth, the plaintiffs gave no notice to PETA and had not posted a "No Trespassing" sign.

### A. *Failure To Plead Lack of Permission*

PETA cites no authority for this ground and I have found none. The silence on this subject of so many authorities persuades me there is no such requirement. See *Friend's Virginia Pleading and Practice*, § 27.14 (2d ed. 2006); *Burks, Pleading and Practice*, § 142 (4th ed. 1952); *Gregory's Forms*, No. 68 (1935). Consent is a defense, not something the plaintiff need deny.

### B. *Express Authority*

The claim that PETA's "agents and representatives" had express authority to enter upon the plaintiffs' porch to remove feral cats is not contained in the complaint, but rather in the factual narrative PETA includes in its brief. I may not consider this narrative in ruling on the demurrer. Furthermore, a dog is not a cat.

## C. *Implied License*

The parties agree there was an implied license for the public to enter upon the plaintiffs' porch. the parties disagree about what the license allows and whether it is a defense as a matter of law to this claim of trespass. PETA claims the implied license allows anyone to enter onto another's land and go to the front door for any purpose, and if he steals goods of the occupier of the land, he is a thief, but no trespasser. I do not agree.

A license is merely permission to enter the real estate of another. *Station # 2 v. Lynch*, 280 Va. 166, 695 S.E.2d 537 (2010). "[L]icenses amount to nothing more than an excuse for the act which would otherwise be a trespass, and render the party liable to damages." *Power v. Tazewell*, 25 Gratt. (66 Va.) 786, 790 (1875).

Most of us living in cities, towns, suburbs, and residential developments (in the absence of a no trespassing sign or a locked gate) impliedly grant the public a license to travel from the street or sidewalk to our door for many purposes, some welcome, others not: social visits, the delivery of mail and packages, the hawking and peddling of goods and services, trick-or-treating, the solicitation of votes, and proselytizing immediately come to mind. In his dissenting opinion in *Florida v. Jardines*, 133 S.Ct. 1409, 1421-22 (2013), Justice Alito observed that the law of trespass has not attempted to distinguish between welcome and unwelcome visitors. However, none of the activities he mentioned involved tortious or criminal acts. The majority held the implied license did not permit a police officer to walk up to Jardines's front door with a drug-sniffing dog for a "canine forensic investigation." 133 S.Ct. at 1416.

A case Justice Alito cited gives a description of this implied license that is consonant with reason and experience:

> the law will imply a license, in the absence of any proof of direct authority, from the necessities of individuals and from the usages of the community. Thus it has been held that the entry upon another's close, or into his house, at usual and reasonable hours, and in a customary manner, for any of the common purposes of life, cannot be regarded as trespass.

*Larkin v. Ames*, 64 Mass. 198, 220, 10 Cush. 198 (1852). Entering upon my land to carry away my goods is neither necessary nor customary.

In *Faulkner v. Alderson*, Gilm. (21 Va.) 221 (1821), the landlord of a tenant at will entered her home in search of stolen goods and damaged some of her property. Both judges who wrote opinions decided the defendant had a right of entry for some purposes but that his actions rendered him a trespasser *ab initio*. Judge Coalter held: "the rule is that, where entry, authority, or license is given to any one by law, and he abuses it, he shall

be a trespasser *ab initio*; for the court will judge by the subsequent act, *quo animo*, or to what intent he entered," Gilm. at 226.

In *McClannan v. Chaplain*, 136 Va. 1, 116 S.E. 495 (1923), the plaintiff brought an action for trespass on the case against several police officers who entered his farm in search of a still. The Court stated: "It is also true that, even if the entry of the defendants was lawful, if, after the entry, they, in their conduct, exceeded their authority, by doing some act which they had no right to do, the law will consider them as trespassers *ab initio*." 136 Va. at 11, 116 S.E. at 497.

PETA relies on *Bowles v. May*, 159 Va. 419, 166 S.E. 550 (1932). The defendant had previously been a guest in the plaintiff's home, and, on the occasion in question, he entered it to discuss with her rumors he had heard that she was defaming him. While seated eight feet from her, he "shook" his finger at her and he threatened her with a criminal libel action. The Court held the shaking of the finger was not an assault, that there was a qualified privilege for the words spoken, and the defendant's acts after entry did not make him a trespasser. Here, the facts pleaded clearly allege a conversion, which would have rendered Carey a trespasser *ab initio*.

### D. *Interference with the Plaintiffs' Possession*

PETA claims it did not significantly interfere with the plaintiffs' possession and cites *Collett v. Cordovana*, 290 Va. 139, 772 S.E.2d 584 (2015), where the plaintiffs sued for both trespass and nuisance. PETA relies on this sentence: "The discomfort and annoyance must, however, be significant and of a kind that would be suffered by a normal person in the community." 290 Va. at 146, 772 S.E.2d at 587-88. The Court stated this in its discussion of what is required to show nuisance, not trespass.

To plead an action of trespass *quare clausum fregit*, a plaintiff need only allege a physical entry upon the surface of land he possesses. Walking upon the land can suffice. *Cooper v. Horn*, 248 Va. 417, 423, 448 S.E.2d 403, 406 (1994). This has been the law for centuries.

> Our law holds the property of every man so sacred, that no man can set his foot upon his neighbour's close without his leave; if he does, he is a trespasser, though he does no damage at all; if he will tread upon his neighbour's ground, he must justify it by law.

*Entick v. Carrington*, 19 State Tr. 1029, 1066, 2 Wils. K.B. 257, 291, 95 Eng. Rep. 807, 817, (K.B. 1765).

### E. *Lack of Notice*

Code § 18.2-119 requires the posting of a sign in some circumstances before a person can be found guilty of criminal trespass. PETA cites no

authority for the necessity of notice or the posting of a sign as a requirement for civil liability. The authorities I have reviewed, except Blackstone, are silent on this subject as well. He wrote of trespass to land that "The Roman laws seem to have made a direct prohibition necessary, in order to constitute this injury," but the law of England did not. 3 *Commentaries* 209. The common law of England at the time of our Revolution is the rule of decision unless the General Assembly has altered it. Code § 1-200; *United States Fidelity Co. v. Carter*, 161 Va. 381, 170 S.E.764 (1933). The General Assembly has not altered this.

I entirely overrule the demurrer to the claim of trespass.

### *Intentional Infliction of Emotional Distress*

The plaintiff must plead facts supporting the four elements of this tort: (1) the defendant's conduct was intentional or reckless; (2) the conduct is outrageous and intolerable; (3) there is a causal connection between the conduct and the emotional distress; (4) the distress is severe. *Russo v. White*, 241 Va. 23, 26, 400 S.E.2d 160, 162 (1991). PETA claims the plaintiffs have not adequately pleaded the first, second, and fourth elements.

### A. *Intentional or Reckless Conduct*

PETA claims there is no allegation it knew the dog belonged to the child or that the child even existed. Relying on *SuperValu, Inc. v. Johnson*, 276 Va. 356, 666 S.E.2d 335 (2008), it contends the conduct must have been intentionally directed toward the plaintiff. *SuperValu* arose out of a business dispute, and the Court held that the circuit court should have struck the plaintiff's evidence because the defendant's conduct was directed at the plaintiff's business.

> A predicate requirement for any claim of intentional infliction of emotional distress is that the alleged harmful conduct was directed intentionally toward the affected individual. In the absence of such conduct directed at a person individually, the law will not recognize a claim of intentional infliction of emotional distress.

276 Va. at 371, 666 S.E.2d at 344. This could be read in either of two ways. First, the Court is either clarifying or further restricting this "not favored" tort. Second, it is merely commenting on the facts of the case. I believe it is the former. The tort was first recognized in *Womack v. Eldridge*, 215 Va. 338, 210 S.E.2d 145 (1974), and the Court defined the first element as:

> the wrongdoer's conduct was intentional or reckless. This element is satisfied where the wrongdoer had the specific purpose of inflicting emotional distress or where he intended

his specific conduct and knew or should have known that emotional distress would likely result.

215 Va. at 342, 210 S.E.2d at 148. The Court did not state in *Womack* that the conduct must be directed toward the plaintiff, but, in the reported cases cited (save *SuperValu*), the conduct has been so directed. In *Womack,* the Court cited with favor *Samms v. Eccles,* 11 Utah 2d 289, 293, 358 P.2d 344, 346-47 (1961), where the Utah Supreme Court ruled with respect to what is the first element:

> [T]he best considered view recognizes an action for severe emotional distress, though not accompanied by bodily impact or physical injury, where the defendant intentionally engaged in some conduct toward the plaintiff, (a) with the purpose of inflicting emotional distress, *or,* (b) where any reasonable person would have known that such would result.

I conclude a plaintiff must plead in a claim for intentional infliction of emotional distress that the defendant's conduct was directed at the plaintiff. If it were otherwise, for example, a bystander who witnessed a horrific act committed against a third person could sue the perpetrator, and the dangers the Court recognized in *Ruth v. Fletcher,* 237 Va. 366, 372-73, 377 S.E.2d 412, 415 (1989), would be more difficult to prevent. The plaintiffs have not pleaded that PETA's conduct was directed toward Cynthia Zarate. I sustain the demurrer on this ground.

## B. *Outrageous and Intolerable Conduct*

PETA claims the facts pleaded are not sufficient "to meet the 'outrageous conduct' prong of the familiar test." Memorandum in support of demurrer at page 9. I believe reasonable people could find that taking another's dog and killing it is outrageous and intolerable. I overrule PETA's demurrer on this ground.

## C. *Severe Emotional Distress*

The plaintiffs allege: "Among other things, [Cynthia] cried for weeks, became lethargic, refrained from eating and lost weight." Complaint, ¶ 64. These allegations do not materially differ from those found insufficient in *Russo, supra,* and *Harris v. Kreutzer,* 271 Va. 188, 624 S.E.2d 24 (2006). I sustain the demurrer on this ground.

### *Punitive Damages*

PETA also demurs to the claims for punitive damages because the plaintiffs have not pleaded ratification or authorization and because they seek more than allowed by statute.

## A. *Authorization or Ratification*

Punitive damages may be awarded against a master or principal only if it participated in the act or authorized or ratified it. *Egan v. Butler*, 290 Va. 62, 772 S.E.2d 765 (2015). The plaintiffs do not claim participation by a sufficiently high employee of PETA to warrant an award of punitive damages against it. However, I believe the factual allegations in paragraphs 17-18 and 31-33 sufficiently allege authorization.

## B. *Statutory Limit*

Code § 8.01-38.1 is one of three statutory dollar limits on the recovery of damages. The others are for medical malpractice actions, Code § 8.01-581.15, and tort claims against the Commonwealth, Code § 8.01-195.3. The latter statutes limit the "amount recoverable," and in *Etheridge v. Medical Center Hospitals*, 237 Va. 87, 376 S.E.2d 525 (1989), and *Torloni v. Commonwealth*, 274 Va. 261, 645 S.E.2d 487 (2007), the Supreme Court held these limits do not apply until after the jury returns its verdict.

Code § 8.01-38.1 limits the "amount awarded," but I do not believe the General Assembly intended this statute to operate differently. It also provides the jury is not to be advised of the limit and the court is to reduce any "award" of punitive damages to the statutory limit. This statute also controls what is to be done with the jury's verdict after it is returned.

The judges of this court (and across the Commonwealth) have differed on the question. Judge Morrison held the plaintiff could plead more than the statutory limit. *Berry v. Scott & Stringfellow*, 45 Va. Cir. 240 (1988). Judge Poston reached the opposite conclusion. *Burnette v. Norfolk Academy*, 2010 Va. Cir. LEXIS 54 (2010). I agree with Judge Morrison.

### *Motion To Bifurcate*

I shall keep this under advisement until we are closer to trial.