Present:  All the Justices

LEO J. PERK

OPINION BY JUSTICE ROSCOE B. STEPHENSON, JR.
v.  Record No. 960794

April 18, 1997

VECTOR RESOURCES GROUP, LTD., ET AL.

FROM THE CIRCUIT COURT OF ESSEX COUNTY
Joseph E. Spruill, Jr., Judge

The principal issue in this appeal is whether the trial court erred in sustaining the defendants' demurrer to the plaintiff's motion for judgment.

I

On June 21, 1990, Leo J. Perk, a practicing attorney at law, filed a multi-count motion for judgment against Vector Resources Group, Ltd. (Vector), Charles Michael Monahan, a Vector employee, and the law firm known as Sheffield & Bricken, P.C. (the Firm) (collectively, the Defendants).[1]  The Defendants filed demurrers to the motion for judgment which the trial court sustained, ruling that none of the counts in the motion for judgment stated a cause of action against the Defendants.  The court also denied Perk leave to amend his motion for judgment, reasoning that "the amended claims would establish that venue does not lie in this Court."  We awarded Perk an appeal.

II

As this case was decided on demurrer, we look solely at Perk's allegations in his motion for judgment to determine

_____

[1]Perk also sued Riverside Tappahannock Hospital, Inc., but Perk's suit against the hospital ultimately settled and was dismissed.  Therefore, Counts I and II of the motion for judgment are not at issue in this appeal.

whether he stated a cause of action because "[a] demurrer admits the truth of all material facts that are properly pleaded." Bowman v. State Bank of Keysville, 229 Va. 534, 536, 331 S.E.2d 797, 798 (1985). The facts admitted as true are (1) those expressly alleged, (2) those which are by fair intendment impliedly alleged, and (3) those which may be fairly and justly inferred from the facts alleged. Id.

Perk entered into an at-will contract with Tidewater Memorial Hospital, Inc. (Tidewater) to undertake the collection of Tidewater's more than 3,000 delinquent accounts receivable. Sometime thereafter, Tidewater was acquired by what is now Riverside Tappahannock Hospital, Inc. (Riverside). The collection contract continued with Riverside for a period of time without change.

On November 10, 1989, however, Riverside terminated the contract and instructed Perk to forward all payments thereafter received by him directly to Riverside without any fee deduction. Riverside also instructed Perk to deliver all the delinquent accounts to either it or Monahan.

Count III of the motion for judgment alleges that Monahan acted individually and as agent, servant, and employee of Vector and that Monahan and Vector "willfully[,] intentionally[,] and without justification and in reckless disregard of the rights of the contracting parties persuad[ed] and induc[ed] [Riverside] to breach the Contract [with Perk]." Count III further alleges that

Monahan's and Vector's acts were "calculated to cause damage to [Perk] in his . . . business and profession" and that Monahan's and Vector's "wrongful acts were the sole proximate cause of the breach of the Contract by [Riverside]."

Count IV of the motion for judgment alleges that Perk had "invested substantial amounts of his personal time and money in creating, designing[,] and developing his own customized computer programs, computer databases[,] and computer software" and that Monahan and the Firm "knowingly, willfully, deliberately[,] and without justification stole and converted [Perk's] . . . computer programs, computer databases, computer software[,] and computer data."  Count IV further alleges that, "as a direct and proximate result of the . . . theft and conversion," Perk was damaged "to the extent of the value of his efforts in creating [the] computer programs, computer databases, computer software[,] and computer data, [of] the fair market value of [the] computer programs, computer databases, computer software[,] and computer data, and [of] the loss of his profits that [Perk] would have enjoyed had [Monahan and the Firm] not stolen his . . . property."

In Count V of the motion for judgment, Perk alleges that the Firm and Riverside had received numerous complaints from debtors concerning payments they had made to Perk for which they had not been given proper credit and that, in response to these complaints, the Firm and Riverside had told each debtor that the

payments in question had not been reported to Riverside by Perk. Count V further alleges that the statements made to the debtors by the Firm and Riverside were not true; that the Firm and Riverside knew, or should have known, that the statements were not true; and that each statement was "defamatory and slanderous per se," was "calculated to . . . adversely affect [Perk's] reputation for honesty, and integrity, and adversely reflected on [Perk's] abilities in his profession."

Count VI alleges that "all of the Defendants combined together to mutually undertake said acts for the purpose of willfully and maliciously injuring [Perk] in his reputation and profession as a practicing attorney at law." Count VI further alleges that, as "a direct and proximate result of [the Defendants'] mutual undertaking," Perk "has suffered damage to his professional reputation, loss of profits, humiliation, and extreme mental anguish."

### III

We now consider whether the allegations in Counts III through VI of Perk's motion for judgment were sufficient to withstand the Defendants' demurrer.

### A

Count III is a claim of tortious interference with a contract. The requisite elements for a prima facie showing of a tortious interference with an at-will contract are:

> "(1) the existence of a valid contractual relationship or business expectancy; (2) knowledge of the relationship or expectancy on the part of the

interferor; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted."

Duggin v. Adams, 234 Va. 221, 226, 360 S.E.2d 832, 835 (1987) (quoting Chaves v. Johnson, 230 Va. 112, 120, 335 S.E.2d 97, 102 (1985)).  Where a contract is terminable at will, however, "a plaintiff, in order to present a prima facie case of tortious interference, must allege and prove not only an intentional interference that caused the termination of the at-will contract, but also that the defendant employed `improper methods.'"  Id. at 226-27, 360 S.E.2d at 836 (quoting Hechler Chevrolet v. General Motors Corp., 230 Va. 396, 402, 337 S.E.2d 744, 748 (1985)).  Methods considered "improper" include those that are illegal or independently tortious.  Id. at 227, 360 S.E.2d at 836.  Obviously, the requisite improper methods must have occurred prior to the termination of the contract in order to constitute the cause of the termination.  See Hilb, Rogal and Hamilton Company v. DePew, 247 Va. 240, 246 n.4, 440 S.E.2d 918, 922 n.4 (1994).

In the present case, the improper methods upon which Perk relies are "the acts of the Defendants . . . as further alleged;" i.e., the alleged theft by Monahan and the Firm and the alleged defamation by the Firm.  These allegedly illegal or tortious acts, however, occurred after the termination of the contract and cannot serve as the basis for Perk's claim of intentional interference with his contract.  Therefore, the trial court

- 5 -

properly sustained the Defendants' demurrer with respect to Count III.

B

We next consider Count IV of the motion for judgment. In this count, Perk alleges the theft or conversion by Monahan and the Firm of his computer programs, data, and software. Perk also alleges that he has lost the value of his efforts in creating the converted items, the fair market value of the items, and future profits.

Pursuant to Code § 18.2-152.8 of the Virginia Computer Crimes Act, Code § 18.2-152.1 et seq., "computer data, computer programs, [and] computer software" are "personal property subject to embezzlement" for the purposes of Code § 18.2-111. Clearly, Count IV alleges that Monahan and the Firm stole or converted such personal property belonging to Perk.

Monahan and the Firm assert, nonetheless, that the items allegedly converted are "nothing more than lists" of Riverside's debtors, which belong solely to Riverside; that Perk consented to the taking of the items; and that the lists were of no value to Perk once the contract had been terminated. The character of the items allegedly converted and the question whether these items had value to Perk aside from his contractual obligations and professional services to Riverside are, however, matters of proof which cannot be decided by demurrer.

We conclude, therefore, that Count IV states a cause of

action.  Consequently, we hold that the trial court erred in sustaining the demurrer as to Count IV.

C

In Count V, Perk alleges that the Firm defamed him by telling some of Riverside's debtors that certain payments the debtors had made to Perk had not been reported to Riverside by Perk.  Perk further alleges that the statements were not true and the Firm knew or should have known that they were untrue.  He also claims that the statements adversely affected his reputation for honesty and integrity, adversely reflected on his abilities as a practicing attorney at law, and were "defamatory and slanderous per se."  As a direct result of these statements, Perk asserts, he suffered "damage to his professional reputation, humiliation, and extreme mental anguish."

At common law, defamatory words which are actionable per se are:
> (1) Those which impute to a person the commission of some criminal offense involving moral turpitude, for which the party, if the charge is true, may be indicted and punished.  (2) Those which impute that a person is infected with some contagious disease, where if the charge is true, it would exclude the party from society.  (3) Those which impute to a person unfitness to perform the duties of an office or employment of profit, or want of integrity in the discharge of the duties of such an office or employment.  (4) Those which prejudice such person in his or her profession or trade.

Carwile v. Richmond Newspapers, 196 Va. 1, 7, 82 S.E.2d 588, 591 (1954).  In addition, a defamatory charge need not be made in direct terms; rather, it may be made "by inference,

implication[,] or insinuation." _Id_., 82 S.E.2d at 592.  However, the meaning of the alleged defamatory charge "cannot, by innuendo, be extended beyond its ordinary and common acceptation."  _Id_. at 8, 82 S.E.2d at 592.  Moreover, innuendo cannot be employed to "introduce new matter, nor extend the meaning of the words used, or make that certain which is in fact uncertain."  _Id_.

We do not think the alleged statements that some payments had not been reported to Riverside by Perk are defamatory per se. We also do not think that a defamatory charge can be inferred from the statements.  To infer such would extend the meaning of the words used beyond their ordinary and common acceptance. Therefore, we conclude that the alleged statements are not sufficiently defamatory on their face to permit a fact finder to decide whether in fact the statements were actually defamatory. _See_ _The Gazette_ v. _Harris_, 229 Va. 1, 29, 325 S.E.2d 713, 733 (1985).  Consequently, the trial court properly sustained the demurrer as to Count V.

D

The final count in the motion for judgment, Count VI, alleges that all the Defendants conspired to injure Perk in his profession.  Perk, however, also repeatedly alleges that a principal-agent or an employer-employee relationship existed between the several Defendants, and, therefore, the Defendants are not separate entities.  As we have held, an entity cannot

- 8 -

conspire with itself. <u>Charles E. Brauer Co.</u> v. <u>NationsBank</u>, 251 Va. 28, 36, 466 S.E.2d 382, 387 (1996); <u>Fox</u> v. <u>Deese</u>, 234 Va. 412, 428, 362 S.E.2d 699, 708 (1987). Thus, a conspiracy among the Defendants was legally impossible. Therefore, the trial court properly sustained the demurrer to Count VI.

IV

The final issue for resolution relates to the trial court's finding regarding venue. In its final order, the trial court, after stating that none of the counts in the motion for judgment stated a cause of action against the Defendants, ruled, <u>sua sponte</u>, that, "if the Court granted leave to amend as to these defendants, the amended claims would establish that venue does not lie in this Court." Therefore, the trial court sustained the demurrer "without leave to amend." We think the trial court erred.

First, none of the Defendants ever made any objection to venue lying in Essex County and, thus, waived any venue irregularity. Code § 8.01-264. Second, we think the trial court abused its discretion in denying Perk's request for leave to amend his motion for judgment on the ground that "the amended claims would establish that venue does not lie in this Court."[2]

_____

[2] The Defendants assert that "Perk . . . failed to present to [this Court] any indication that his proposed amendment would have resulted in anything more than reargument of the same questions already decided by the trial court." In view of the basis for the trial court's denying Perk's request for leave to amend, we think presentation of an indication of what he would have proposed would have been a futile act, and a litigant is not required to perform a futile act. <u>See</u> <u>Snead</u> v. <u>Harbaugh</u>, 241 Va.

- 9 -

Upon remand, therefore, the trial court shall grant leave to Perk to file an amended motion for judgment.

V

Accordingly, the trial court's judgment will be affirmed in part, reversed in part, and the case remanded for further proceedings consistent with this opinion.

<u>Affirmed in part</u>,
<u>reversed in part</u>,
<u>and remanded.</u>

(..continued)
524, 526 n.1, 404 S.E.2d 53, 54 n.1 (1991).