## CIRCUIT COURT OF THE CITY OF WINCHESTER

Steven J. Lamb

    v.

Charles Weiss,
President, et al.

July 9, 2003

Case No. (Law) 03-7

BY JUDGE JOHN E. WETSEL, JR.

This case came before the Court on the Defendant Weiss's Demurrer to the Plaintiff's defamation action. Upon further consideration, the Court has decided to sustain the Demurrer to the Defamation Count in part and to overrule it in part.

### I. *Statement of Material Facts*

The following facts are pleaded in the Motion for Judgment.

The Plaintiff Lamb was formerly employed at the Winchester-Frederick County Chamber of Commerce as the Director of the Convention and Visitor's Bureau.

The Defendant Weiss was the President of the Chamber of Commerce, and Lamb claims that Weiss made various charges for Chamber-related business that were charged against the Convention and Visitor's Bureau advertising budget even though they were not advertising-related costs: $5,595.00 to pay for a computer program, $90.05 for a flag, and $283.20 for a computer

keyboard. It is also alleged that Weiss charged $10,000 against the Convention and Visitor's Bureau budget for the Chamber of Commerce's purchase of a new building. Lamb claims that all of these charges were not proper and that he protested these actions to Weiss.

Weiss fired Lamb, and Lamb claims that he was fired because he refused to lie as requested by Weiss in a meeting between the Tourism Board and the City Manager on May 9, 2002, and because he refused to help Weiss cover up Weiss's misappropriation of funds.

After he fired Lamb, Weiss then told the City Visitor Center Manager and a co-worker that he had fired Lamb because "he spend too much money on advertising" and that "Mr. Lamb was incompetent" (MFJ, ¶ 41) and that Lamb had "not properly managed his advertising budget" and had "misspent the [advertising] funds." (MFJ, ¶¶ 52, 54.) These are the statements upon which Lamb has based his defamation action.

## II. *Conclusions of Law*

### 1. *Law of Libel*

In *Chapin v. Greve*, 787 F. Supp. 557, 561-63, (E.D. Va. 1992), aff'd *sub nom. Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087 (4th Cir. 1993), the United States District Court for the Eastern District of Virginia undertook an extensive discussion of the current resolution of the tension between the First Amendment right to free expression and the personal right to protection of an individual's reputation against calumnious criticism through a defamation action:

> To defame a person is to attack his or her good name, thereby injuring his or her reputation. *See Webster's II New Riverside University Dictionary* (1984). But not every unflattering or unwelcome remark will sustain a libel suit. To be defamatory as a matter of law, a statement must be "more than merely unpleasant or offensive;" it must "make the plaintiff appear odious, infamous, or ridiculous." *McBride v. Merrell Dow and Pharmaceuticals, Inc.*, 540 F. Supp. 1252, 1254 (D. D.C. 1982), *aff'd in part and rev'd in part on other grounds*, 230 App. D.C. 403, 717 F.2d 1460 (D.C. Cir. 1983). *See also* R. Sack, *Libel, Slander, and Related Problems* 45 (1980) ("There is common agreement that

a communication that is merely unflattering, annoying, irksome, or embarrassing, or that hurts the plaintiff's feelings, without more, is not actionable."). Statements may be defamatory by implication, inference, innuendo, or insinuation, provided the alleged defamatory meaning is plain. *See, e.g., Milkovich*, 110 S. Ct. at 2707; *White v. Fraternal Order of Police*, 285 App. D.C. 273, 909 F.2d 512 (D.C. Cir. 1990); *Wilder*, 551 F. Supp. at 623; *Gen. Products v. Meredith Corp.*, 526 F. Supp. 546 (E.D. Va. 1981); *Gazette*, 325 S.E.2d at 713; *Carwile v. Richmond Newspapers, Inc.*, 196 Va. 1, 82 S.E.2d 588, 591-92 (Va. 1954). The established test under Virginia law for divining whether statements are defamatory is found in *Carwile*:

"Although varying circumstances often make it difficult to determine whether particular language is defamatory, it is a general rule that allegedly defamatory words are to be taken in their plain and natural meaning and to be understood by courts and juries as other people would understand them, and according to the sense in which they appear to have been used. ... In determining whether the words and statements complained of in the instant case are reasonably capable of the meaning ascribed to them by innuendo, every fair inference that may be drawn from the pleadings must be resolved in the plaintiff's favor. However, the meaning of the alleged defamatory language can not, by innuendo, be extended beyond its ordinary and common acceptation. The province of the innuendo is to show how the words used are defamatory, and how they relate to the plaintiff, but it cannot introduce new matter, nor extend the meaning of the words used, or make that certain which is in fact uncertain." 82 S.E.2d at 591-92 (citations omitted).

Moreover, a plaintiff cannot combine the damaging nature of certain true statements with the falsity of other, immaterial statements in order to provide the basis for a defamation claim. *See AIDS Counseling and Testing Centers v. Group W Television, Inc.*, 903 F.2d 1000 (4th Cir. 1990). In addition, under Virginia law, statements which impute to a business or professional person conduct which tends to injure her in her business or profession

are actionable as defamation *per se*, without proof of special damages. *See Carwile*, 82 S.E.2d at 592.

But the inquiry into whether a statement is actionable does not end with a determination that it is, or is not, defamatory. Not all defamatory statements are actionable. First, as earlier noted, a defamatory statement must be false to be actionable, truth being an absolute defense to a libel action. *See, e.g., Freedlander v. Edens Broadcasting, Inc.*, 734 F. Supp. 221 (E.D. Va. 1990). Second, certain statements of opinion, even if defamatory, are constitutionally protected. *See Milkovich*, 110 S. Ct. at 2705-08; *Gertz*, 418 U.S. at 339-40. Specifically, *opinion statements, defamatory or otherwise, are not actionable unless they contain provably true or false factual connotations. See Milkovich*, 110 S. Ct. at 2705-06. Third, in some circumstances, defamatory words are not actionable under the doctrine of libel by implication of true facts. *See White*, 909 F.2d at 512. Under this doctrine, liability for libelous implications drawn from true facts attaches only where there is "by the particular manner or language in which the true facts are conveyed ... affirmative evidence suggesting that the defendant *intends* or *endorses* the defamatory inference." *White*, 909 F.2d at 520 (emphasis in original). As plaintiffs correctly assert, *White* applies only where the facts giving rise to an alleged defamatory implication are true.

*Chapin*, 787 F. Supp. at 561-63 (emphasis added).

## 2. *Libel per Se*

In *Perk v. Vector Resources Group, Ltd.*, 253 Va. 310, 316, 485 S.E.2d 140 (1997), the Supreme Court affirmed the trial court's sustaining of a demurrer to a libel action, where an attorney sued defendants whom he claimed defamed him by telling some of a hospital's debtors that certain payments made by the debtors had not been reported by the attorney. In ruling, the Supreme Court stated: "At common law, defamatory words which are actionable *per se* include ... *[t]hose which impute to a person unfitness to perform the duties of an office or employment of profit, or want of integrity in the discharge of the duties of such an office or employment. Those which prejudice such person in*

*his or her profession or trade. Id. quoting Carwile v. Richmond Newspapers,* 196 Va. 1, 7, 82 S.E.2d 588, 591 (1954) (emphasis added). *See also Great Coastal Express* v. *Ellington,* 230 Va. 142, 147, 147 334 S.E.2d 846 (1985).

### 3. *Can the Derogatory Words Be Objectively Tested?*

The first step in any defamation analysis is to examine the words used to determine whether the language can be fairly viewed to impugn the reputation of the plaintiff. Reputation is personal to the individual, so defamation derives from an attack directed at the individual as opposed to a attack on ideas or opinions espoused by the individual, which in a free society are generally fair game for discussion and attack. While the general rule may be that "[w]hether a statement is characterized as a fact or opinion is no longer a relevant inquiry in determining whether it is constitutionally privileged," 50 Am. Jur. 2d, *Libel and Slander,* § 105, citing *Milkovich v. Lorain Journal Co.,* 497 U.S. 1, 111 L. Ed. 2d 1, 110 S. Ct. 2695, the opinion rule still prevails in Virginia. Unless there is a factual kernel contained in the statement which can be objectively proven to be true or false, there is no statement which can be a viable foundation for a defamation action.

The fact versus opinion distinction is not always a bright line. Generally descriptive words imply facts, and evaluative words imply an opinion, but even this logical distinction fails many times in actual application. "Big" is descriptive, but it may also be an opinion. The distinction between fact and value has provided grist for philosophers since the time of Aristotle, so the fact-opinion dichotomy actually simply provides general guidance as opposed to a concrete analytic calculus. Words are always colored by the context in which they are used and the actual state of human knowledge at the time of their utterance. In Copernicus' time, the majority view was that the earth was the center of the universe, and his thesis that the earth revolved around the sun was an heretical opinion. Given the relative nature and infinite variety of human expression, the dispositive distinction seems to involve a practical consideration of whether the defamatory comment could be proven to be true or false. If it is not susceptible to proof of falsity, then it is not actionable; therefore, it is simply an opinion.

In *American Communications Network, Inc. v. Williams,* 264 Va. 336, 340, 568 S.E.2d 683 (2002), the Supreme Court reaffirmed its holding in *Williams v. Garraghty,* 249 Va. 224, 233, 455 S.E.2d 209 (1995), that:

> *pure expressions of opinion cannot form the basis of a defamation action,* but ... "factual statements made to support or justify an opinion, however, can form the basis of an action for defamation." *See Swengler v. ITT Corp.,* 993 F.2d 1063, 1071 (4th Cir. 1993) (construing Virginia law). It is for a court, not a jury, to determine, as a matter of law, whether an alleged defamatory statement is one of fact or of opinion."

*American Communications,* 264 Va. at 340 (emphasis added).

This statement of the law is not as broad as the Restatement (Second) of Torts § 566 view: "A defamatory communication may consist of a statement in the form of an opinion, but a statement of this nature is actionable only if it implies the allegation of undisclosed defamatory facts as the basis for the opinion." Restatement (Second) of Torts § 566. "[I]f the recipient draws the reasonable conclusion that the derogatory opinion expressed in the comment must have been based on undisclosed defamatory facts, the defendant is subject to liability. The defendant cannot insist that the undisclosed facts were not defamatory but that he unreasonably formed the derogatory opinion from them." *Id.,* comment c.

Virginia has never expressly embraced the Restatement view that a statement of opinion, which does not disclose defamatory facts, may be actionable "if it implies the allegation of undisclosed defamatory facts . . ." and the "recipient draws the reasonable conclusion that the derogatory opinion expressed in the comment must have been based on undisclosed defamatory facts. . . ."

In *American Communications, supra,* Williams, who was a former executive employee, alleged that the following statements about his management were libelous:

> In June 2000, American Communications Network replaced the management team of ACN Energy due to its failure to establish effective operations. The prior management made two key mistakes:
>
> 1. It did not have the organizational infrastructure needed to support the 24 markets it was aggressively entering. The complexity overwhelmed the organization such that basic business processes were not established prior to entering new markets.

2. It decided to create, in house, a proprietary billing system rather than initially leveraging off the local distribution company's (LDC) capability of cost-effectively billing on behalf of the Company. Without the requisite information technology (IT) and commercial organization in place to accommodate 24 different markets (each with its own unique IT and commercial issues), the company delayed sending bills to a significant number of customers.

The Supreme Court ruled that the "the statements in the alleged defamatory publication are either true *or constitute opinion. . . ." American Communications*, 264 Va. at 341, so the libel verdict was reversed.

*American Communications*, illustrates the Supreme Court's steadfast adherence to the principle that expressions of pure opinion unaccompanied by any facts expressed in the allegedly defamatory comment are not a predicate for a defamation action. *See, e.g., Chaves v. Johnson*, 230 Va. 112 (1985) (The defendant who was a competitor wrote a letter to city council after a bid award stating that the plaintiff architect, who had been awarded the bid, had "no past experience" and was charging "an unjustifiably high fee."); and *Yeagle v. Collegiate Times*, 255 Va. 293, 497 S.E.2d 136 (1998) (The defendant called the plaintiff administrator the "Director of Butt Licking.").

*Fuste v. Riverside Healthcare Assoc.*, 265 Va. 127, 133, (2003), is an example of a case involving specific statements about a professional's work that the Supreme Court held contained factual statements that were provably false:

Statements that are relative in nature and depend largely upon the speaker's viewpoint are expressions of opinion. *Chaves*, 230 Va. at 119, 335 S.E.2d at 101. Whether an alleged defamatory statement is one of fact or opinion is a question of law and is, therefore, properly decided by a court instead of a jury. *Id.*, 335 S.E.2d at 102.

Applying these principles, we hold that the alleged statements that Drs. Fuste and Vanden Hoek "abandoned" their patients and that there were "concerns about their competence" not only prejudice the doctors in the practice of their profession, *see ... Carwile*, 196 Va. at 7, 825 S.E.2d at 591, but also contain "a provably false factual connotation." *WJLA-TV*, 264

Va. at 156, 564 S.E.2d at 392. In other words, they are capable of being proven true or false. For example, evidence could be presented to show whether there were, in fact, concerns about the plaintiffs' competence. Similarly, since the term "abandon" has a particular connotation in the context of a doctor's professional responsibility to a patient, *see ... Rosen v. Greifenberger*, 257 Va. 373, 380, 513 S.E.2d 861, 865 (1999) (a doctor has a duty to continue services to a patient after accepting employment and cannot thereafter voluntarily "abandon" a patient); *Vann v. Harden*, 187 Va. 555, 565-66, 47 S.E.2d 314, 319 (1948) (same), the statement that Drs. Fuste and Vanden Hoek "abandoned" their patients is demonstrably true or false. *See ... Blue Ridge Bank v. Veribanc, Inc.*, 866 F.2d 681, 685 (4th Cir. 1989) (a speaker's choice of words and the context of an alleged defamatory statement within the speech as a whole are factors to consider when deciding if a challenged statement is one of fact or opinion).

"To determine if a publication is defamatory, the Court must look at the entire communication and not examine separate sentences or portions or with an eye constrained to the objectional feature alone. Construction will be derived from the expressions used in the whole scope and apparent object of the writer." 50 Am. Jur. 2d, *Libel and Slander*, § 124. "Allegedly defamatory statements must be construed from the standpoint of the average reader or average lay leader. The test is what construction would be placed upon such language by the average reasonable person or the general public." 50 Am. Jur. 2d, *Libel and Slander*, § 127.

Defamation actions frequently arise in the context of an employee's discharge, and where the discharged employee is not a professional, the alleged defamatory statement must be analyzed to determine whether the statement "impute[s] unfitness to perform the duties of his employment or if they prejudice him in his profession or trade. Statements which were considered actionable *per se* include statements that the employee was discharged for theft or misappropriation of funds ... for alcoholism, inefficiency, lack of punctuality, and unreliability." 50 Am. Jur. 2d, *Libel and Slander*, § 224. Unfortunately, there is no touchstone by which to test the sufficiency of the alleged defamatory statement other than to examine the statement in the context in which it was made to determine whether it is

defamatory. A review of the statements about employees in defamation actions illustrates the fact specific nature of the inquiry as to what is potentially defamatory and that the comment must contain a factual statement which can be proved false. *Fuste v. Riverside Healthcare Assoc.*, 265 Va. 127, 133, (2003) (abandoned patients and concerns about competence were provable facts); *Southeastern Tidewater Opportunity Project, Inc. v Bade*, 246 Va. 273, 276, 435 S.E.2d 131 (1993) (statements in letter to board of directors about employee's law violations and providing false information were privileged); *Great Coastal Express, Inc. v. Ellington*, 230 Va. 142, 334 S.E.2d 846 (1985) (allegations of attempted bribery against former employee when not proven was sufficient); *Kroger Co. v. Young*, 210 Va. 564, 172 S.E.2d 720 (1970); *Kay v. Collins*, 39 Va. Cir. 150, 151-52 (Richmond 1996) (derogatory statements about specific work habits, productivity, and ability to work with others were sufficient to support defamation action); and *Hargrave v. Tignor*, 24 Va. Cir. 353 (Stafford 1991) (would not rehire because of conflicts with supervisor and other personnel was privileged). The consistent thread through all of the cases where the statements were held sufficient to support a defamation action is a statement of specific facts such as law violations or specific poor work habits.

Where an individual is engaged in a profession, such as medicine, the law, or teaching, *see* 50 Am. Jur. 2d, *Libel and Slander*, §§ 227, 229, and 231, "[w]ords charging professional incompetence are actionable *per se*." "When particular skill or ability is necessary [in the performance of the plaintiff's vocation], an imputation that attributes a lack of skill or ability [to the plaintiff] tends to harm the other [the plaintiff] in his business or profession." Restatement (Second) of Torts, § 572, comment c. "Words charging professional incompetence are actionable *per se*." 50 Am. Jur. 2d, *Libel and Slander*, § 216. Since Lamb was not engaged in a profession, the statement that he "was incompetent" is not actionable because there is no provable, objective, professional standard, akin to the standard of care of a reasonable prudent physician, by which his conduct may be assessed to determine his professional competency. Since the statement cannot be proven to be true or false, it cannot be the premise for a defamation action in this case.

The statement that Lamb "spent too much money on advertising" is also a general opinion which cannot be objectively tested. "Too much" is like "big;" it is a relative concept and is pure opinion. However, the statement that Lamb has "not properly managed his advertising budget and had "misspent the [advertising] funds," (MFJ, ¶¶ 52, 54) can be objectively tested and proven to

be true or false. These statements may fairly be viewed as adversely affecting the Plaintiff's reputation. As noted by the Plaintiff, "misspent" means to "spend wrongly," which may mean pay too much for services or goods, or spend money on ineffective advertising, or spend money from the advertising budget on items unrelated to advertising. Any of these statements "impute to … [Lamb] unfitness to perform the duties … of [his] employment." *Perk v. Vector Resources*, 253 Va. 310, 316. *See generally* Restatement (Second) of Torts, § 573.

## III. *Decision*

For the foregoing reasons, it is adjudged and ordered that the Defendant Weiss's demurrer to the Defamation Count is sustained to all of Defendant Weiss's comments except his alleged statement that Lamb had "not properly managed his advertising budget" and had "misspent the [advertising] funds." (MFJ, ¶¶ 52, 54.)