# CIRCUIT COURT OF THE CITY OF ROANOKE

Harry Patrick Frizzell

v.

Media General
Operations, Inc.,
John Adams,
and John Carlin

June 22, 2006

Case No. CL 04-445

BY JUDGE CHARLES N. DORSEY

This matter is before the Court on the defendants' demurrer to Frizzell's amended motion for judgment. In accordance with familiar principles of demurrers, Frizzell's allegations in his amended motion for judgment are accepted as "fact" and constitute the factual basis for the Court's ruling. For the following reasons, the demurrer is sustained.

## I. *Facts*

In April 2003, the Plaintiff, Harry Patrick Frizzell owned a business called DVD Unlimited, operated out of a kiosk in Tanglewood Mall in Roanoke County, which transferred video material from VHS videotapes to DVD videodisks. In April, a customer, Lea Smiley, left approximately 27 VHS tapes with DVD Unlimited for transfer to DVD. A few days later, and in response to Frizzell's unwillingness to sign a one-year lease with Tanglewood Mall, Frizzell received a notice to vacate the mall. An employee of DVD

Unlimited left a voice message at Ms. Smiley's home explaining that the company would be leaving the mall, but would contact her when the videos were complete.

Lea Smiley visited the Tanglewood Mall shortly thereafter and discovered that the DVD Unlimited kiosk was no longer there. Concerned, she contacted the WSLS News Channel 10 Television Station to complain of her inability to contact the principals of DVD Unlimited.

On April 25, 2003, Defendant John Adams, a WSLS news reporter for a program called "Problem Solvers," undertook an investigation into Smiley's complaints. As part of the investigation, he went to Frizzell's residence. As Frizzell was then in North Carolina, another individual at the residence arranged a phone call with him at approximately 2:30 p.m. Frizzell requested that Adams neither record nor air the conversation. Adams did not honor that request and broadcast both the audio and video of the telephone conversation in a Problem Solvers episode later that day.

In the Problem Solvers' broadcasts, Adams implied that Frizzell had cancelled his business and left the mall on less than honorable conditions, but never investigated the reasons for the departure. Adams also reported, falsely, that "people are calling [Problem Solvers] and saying they cannot get their material back and have no way to get the material back,"[1] and that the Roanoke County Police were actively searching for Frizzell at that very moment, implying that he had committed a crime and was eluding the authorities.

Adams gave the impression in the broadcast that his reporting was what caused the tapes to be completed and delivered. Adams reported that "within one minute of hanging up" with Frizzell at around 2:30 p.m., Frizzell called Lea Smiley and said she would have her tapes within one hour. Frizzell insists that the tapes had actually been completed two days before and were awaiting delivery to Smiley. The tapes were delivered at about 4:00 p.m. that day and at no cost to Smiley because of the inconvenience.

Finally, John Carlin, news anchor for WSLS, falsely reported during the initial broadcast that he had spoken with someone at the mall just before the newscast on April 25, 2003, and was advised that "they tell me they also received a number of complaints this morning from angry customers." *Id.* at 3, ¶ 16.

This Problem Solvers episode aired on several occasions, and portions of it were used for future advertisements for the program. Frizzell claims that these alleged statements, in the context of the surrounding circumstances, are

---

1 Am. Mot. J. at 3, ¶ 13.

either expressly or impliedly defamatory, and inasmuch as they relate to his business and his having committed crimes of moral turpitude, they constitute defamation *per se*.

The defendants' contentions on demurrer are (1) the insinuation that the broadcast caused the tapes to be delivered is not capable of a defamatory construction because facts on which it relies are admittedly true and (2) Frizzell's theory of libel by implication fails to allege intent.

## II. *Discussion*

### A. *Standard on Demurrer*

The purpose of a demurrer is to "test[] the legal sufficiency of a motion for judgment." *Harris v. Kreutzer*, 271 Va. 188, 624 S.E.2d 24, 195-96 (2006). It "admits the truth of all material facts that are properly pleaded," which includes "those expressly alleged, those that are impliedly alleged, and those that may be fairly and justly inferred." *Id*. at 195 (citing *Elliott v. Shore Stop, Inc.*, 238 Va. 237, 239-40, 384 S.E.2d 752, 753 (1989)). On demurrer, this Court does not "evaluate and decide the merits of the allegations set forth in [the] motion for judgment, but only . . . whether [they] are sufficient to state a cause of action." *Harris*, 624 S.E.2d at 195 (quoting *Elliott*, 238 Va. at 240, 384 S.E.2d at 753).

### B. *Defamation*

There is no distinction in the Commonwealth between an action for libel and one for slander. *See Fleming v. Moore*, 221 Va. 884, 890, 275 S.E.2d 632, 636 (1981). Both fall under the common umbrella of defamation, the elements of which are: "(1) a publication of (2) an actionable statement with (3) the requisite intent." *Jordan v. Kollman*, 269 Va. 569, 575, 612 S.E.2d 203, 206 (2005). The defendants demur to Frizzell's amended motion for judgment on the second and third elements, that the alleged statements or implications of the statements cannot have a defamatory construction and that he has not alleged the requisite intent.

#### 1. *Defamatory Construction*

"To be actionable," a statement "must be both false and defamatory." *Id*. On demurrer, the plaintiff's allegations are to be taken as true, making falsity in this case a question for a later date. Whether a statement is capable of a

defamatory construction is a question for the Court. *Yeagle v. Collegiate Times*, 255 Va. 293, 296, 497 S.E.2d 136, 138 (1998).

Two general types of defamatory statements exist: (1) *per se* defamatory statements and, to employ the common law nomenclature, (2) *per quod* defamatory statements. *See, e.g., Jordan*, 269 Va. at 574, 612 S.E.2d at 206; *see also Jarrett v. Goldman*, 67 Va. Cir. 361 (Portsmouth 2005) (discussing common law development of two types of defamation). *Per se* defamation basically consists of four categories of statements that are presumed by the common law to be at least somewhat damaging by their mere publication. That is, the element of damages is minimally satisfied on a prima facie basis, assuming the other essential elements of defamation are met. The defamation plaintiff, however, is still entitled to introduce evidence at trial on the damages actually sustained, and the defendant is still entitled to defend. Words are defamatory *per se*, i.e., their damage is presumed, if they:

> (1) Impute the commission of a criminal offense involving moral turpitude;
> (2) Impute that a person is infected with some contagious disease;
> (3) Impute to a person unfitness to perform the duties of an office or employment; or
> (4) Prejudice a person in his or her profession or trade.

*Fleming*, 221 Va. at 889, 275 S.E.2d at 635 (quoting *Shupe v. Rose's Stores*, 213 Va. 374, 376, 193 S.E.2d 766, 767 (1972)).

*Per quod* defamation consists of all other defamatory statements not within those four categories, requiring the plaintiff to actually prove damage to reputation. *Perk v. Vector Res. Group, Ltd.*, 253 Va. 310, 316, 485 S.E.2d 140, 144 (1997); *Jordan*, 269 Va. at 574, 612 S.E.2d at 206. In either event, defamatory statements may be apparent from the face of the words or may arise "by inference, implication, or insinuation," *Perk*, 233 Va. at 316, 485 S.E.2d at 144, though they "cannot, by innuendo, be extended beyond [their] ordinary and common acceptation." *Id.* (quoting *Carwile v. Richmond Newspapers*, 196 Va. 1, 7, 82 S.E.2d 588, 591 (1954)). There is no prohibition on establishing a claim for defamation *per se* on the basis of implication or inference as the defendants have suggested. Defamation *per se* basically consists of four common-law categories of defamation that are presumably damaging. This does not mean that there are

not other types of defamation, i.e., *per quod*, that could be proved by the words on their face or by implication or inference.

The defendants attack Frizzell's claim that the Problem Solvers episode gave the false impression that the broadcast caused the completion and return of the tapes, he would not have otherwise done so, and this damaged him in his business and reputation by imputing a crime of moral turpitude. Am. Mot. J. at 3-4, ¶¶ 15, 19. The defendants argue that this claim is not capable of a defamatory construction because it is substantially true, if the broadcast caused the tapes to be delivered, then they would have been delivered at 3:30 p.m., one hour after the 2:30 p.m. conversation between Frizzell and Adams. *Id.* at 2-3, ¶¶ 10-11, 14. Frizzell contends that the transfers were actually completed two days before and that they were actually delivered at 4:00 p.m. *Perk*, 253 Va. at 316, 485 S.E.2d at 144. The defendants claim that the difference of thirty minutes and two days are not significant. The defendants' memorandum also contends that the amended motion for judgment does not state when the tapes were actually completed. This is not true, as it does state that they were completed approximately two days before these incidents arose. *See* Am. Mot. J. at 3, ¶ 15.

Stated differently, Frizzell complains that he was being falsely portrayed as a deadbeat businessperson that only lives up to his obligations when his business practices are aired before the entire community. If defamation consists of words "that tend to injure the reputation of a person, or to render him odious, contemptible, or ridiculous," as defendants contend, then the suggestion in a news report that a businessperson only follows through on obligations when there is a media threat looming surely would deter future business relations, injure his reputation, and "render him odious, contemptible, or ridiculous." *Chaffin v. Lynch*, 83 Va. 106, 113, 1 S.E. 803, 808 (1887) (quoted in Def.'s Mem. Supp. Demurrers at 4-5). Though taken alone, this might be considered a slight inaccuracy, the alleged implication that Frizzell absconded with the tapes only to return them on public condemnation, which a jury could reasonably infer, is significant within the context of the entire broadcast.

Taking the facts of the amended motion for judgment as true for purposes of demurrer, I find that the reporting could give the impression that Frizzell had absconded with or failed to return the VHS tapes until the threat of the newscast loomed. As such, I find that the facts alleged prejudice Frizzell in his business, making them defamatory *per se*.

## 2. *Requisite Intent*

The "requisite intent" Frizzell must establish depends on the status of the defendant and the damages sought. A defamation plaintiff must establish a higher standard of conduct by the defendant to recover punitive damages. *See Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 325, 94 S. Ct. 2997, 41 L. Ed. 2d 789 (1974). It appears that Frizzell only seeks actual, compensatory damages in the amended motion for judgment, as punitive damages are not expressly claimed in the *ad damnum* clause. *See Harrell v. Woodson*, 233 Va. 117, 120-22, 353 S.E.2d 770 (1987). If the defendant is a public figure or official, the plaintiff must establish that the defendant acted with "actual malice" to recover, that is, "with knowledge that it was false or with reckless disregard of whether it was false or not." *New York Times Co. v. Sullivan*, 376 U.S. 254, 279-80, 84 S. Ct. 710, 11 L. Ed. 2d 686 (1964); *see also The Gazette, Inc. v. Harris*, 229 Va. 1, 325 S.E.2d 713 (1985).

However, in the Commonwealth, where the plaintiff is a private individual, and where damage to reputation is apparent, he or she need only show "that the defendant either knew [the publication] to be false, or believing it to be true, lacked reasonable grounds for such belief, or acted negligently in failing to ascertain the facts on which the publication was based." *The Gazette, Inc.*, 229 Va. at 15, 325 S.E.2d at 724-25. This standard must also be shown to recover actual, compensatory damages. *Id.* The only exception that exists is where damage to reputation is not apparent, and the heightened *New York Times* "actual malice" standard applies. *The Gazette, Inc.*, 229 Va. at 15, 325 S.E.2d at 727. In any event, these standards apply to media and non-media defendants alike. *The Gazette, Inc.*, 229 Va. at 17, 325 S.E.2d at 726.

The defendants demur that all of Frizzell's allegations rely on defamation by innuendo, which requires an allegation that the defamation was actually *intended* or *endorsed*. No plaintiff is required to show specific "intent" in the common legal sense of the word in a defamation action in the Commonwealth. The strictest standard is "actual malice," which applies to public officials, such as elected officials, and public figures, such as individuals thrust into the limelight. Private individuals, on the other hand, need only show negligence, unless the damage to reputation is not apparent.

Frizzell, however, in his amended motion for judgment, has not alleged a violation of any standard. At minimum, to maintain a cause of action for defamation, Frizzell must aver negligence, i.e., specify each duty that each defendant breached. Because he has not met the minimum requirement, the amended motion for judgment in this case is insufficient, the defendants are unaware of what type of case they are required to defend, and the demurrer is

sustained. Frizzell is given thirty days from the date of this letter opinion to replead, if he so chooses. Sup. Ct. Va. Rule 1:8 ("Leave to amend shall be liberally granted in furtherance of the ends of justice.").

## II. *Conclusion*

As Frizzell has not alleged facts sufficient to maintain an action for defamation, the defendants' demurrer is sustained.