PRESENT: Kinser, C.J., Lemons, Millette, Mims, McClanahan, and Powell, JJ., and Koontz, S.J.

PHILLIP D. WEBB

                                          OPINION BY

v.  Record No. 122024        JUSTICE WILLIAM C. MIMS
                                  January 10, 2014

VIRGINIAN-PILOT MEDIA COMPANIES, LLC

FROM THE CIRCUIT COURT OF THE CITY OF CHESAPEAKE
Randall D. Smith, Judge

In this appeal, we consider whether a published article created a defamatory implication for which the plaintiff could recover compensatory and punitive damages.

    I.    BACKGROUND AND MATERIAL PROCEEDINGS BELOW

Virginian-Pilot Media Companies, LLC publishes a newspaper of general circulation ("The Virginian-Pilot").  In December 2009, The Virginian-Pilot published an article written by Louis Hansen.  According to the article, Patrick Bristol ("Patrick") and Kevin Webb ("Kevin") were students at Great Bridge High School ("Great Bridge") in Chesapeake, Virginia.  Kevin's brother, Brian Webb ("Brian"), was a Great Bridge alumnus.

The article reported that on the evening of November 5, 2008, Patrick and a number of his friends drove to Kevin's home to confront him about school-related disagreements.  Kevin's father, Phillip Webb ("Phillip"), sent them away.  The article also reported that in the early morning hours of November 7, 2008, Kevin and Brian went to Patrick's home in retaliation.

There they engaged in a physical altercation with Patrick's father.

The article included several factual statements about Phillip. It stated that Phillip was an assistant principal at Oscar Smith High School, also in Chesapeake. It stated that he previously coached pole vaulting at Great Bridge and that one of his former team members had gone on to earn an Olympic medal in the sport. It described Kevin and Brian as "pole vaulting stars" at Great Bridge.

The article juxtaposed the effect the November incidents had on Patrick, Kevin, and Brian. It stated that Kevin and Brian were each charged with felonies and later convicted of and sentenced for misdemeanor offenses. Nevertheless, Kevin was allowed to remain at Great Bridge and compete in track events. He thereafter graduated and attended college on a track scholarship. By contrast, the article stated that the Chesapeake school system offered to allow Patrick to complete his final year at another high school. Instead, he dropped out, completed a General Educational Development certificate, and anticipated beginning a shipyard apprenticeship program.

Without expressly commenting on this disparity, the article paraphrased a deputy director at the Virginia High School League as stating that "a school principal typically determines whether a student is in good standing and allowed to participate in

2

sports." It also referred to state regulations permitting a school system to suspend or expel a student charged with a felony. It included confirmation by the Chesapeake school system's spokesperson that a student there could be suspended or expelled if charged with a felony.[1] It further quoted the spokesperson verbatim as stating that "Kevin Webb 'did not get preferential treatment because of his dad's position.'" It noted that Phillip declined to comment for the story.

Phillip filed a second amended complaint against Hansen and The Virginian-Pilot alleging libel, libel per se, and libel per quod. He asserted that the article falsely implied that he "had engaged in unethical conduct by obtaining preferential treatment for his son," and that the false implication damaged his reputation. The defendants filed a demurrer in which, among other things, they denied that the article created such an implication. They argued that it did "not suggest in any manner that [Phillip] obtained preferential treatment for his son. In fact, the article expressly states that his son did not receive

---

[1] In actuality, the school system's policy was not to suspend or expel such students. Rather, according to an undisclosed policy administered by its supervisor of discipline, the school system reviewed the student's record, grades, and attendance, and then warned the student and his parent(s) that any subsequent violation of the rules and regulations would result in additional discipline. This policy was not known to the school system's spokesperson and was not disclosed to Hansen or The Virginian-Pilot until trial.

preferential treatment." The circuit court overruled the demurrer.

Thereafter, the defendants moved the court to declare Phillip a public official and thereby require him to prove malice under the standard articulated in New York Times Co. v. Sullivan, 376 U.S. 254 (1964). The court granted the motion and the case proceeded to trial. The defendants moved to strike when Phillip rested his case and at the close of the evidence, arguing that the evidence was insufficient to prove New York Times malice. The court took the motions under advisement and submitted the case to the jury, which returned a verdict awarding Phillip $3,000,000 as compensatory damages. The court thereafter granted the defendants' motions to strike, entered a defense verdict, and dismissed the action with prejudice.

We awarded Phillip this appeal.

## II.  ANALYSIS

Phillip asserts that the circuit court erred by granting the defendants' motion to declare him a public official and by granting their motions to strike. In an assignment of cross-error, the defendants assert that the court erred by overruling their demurrer. We conclude that this assignment of cross-error is dispositive and thus we do not reach the arguments raised in a second assignment of cross-error and Phillip's assignments of error. Deerfield v. City of Hampton, 283 Va. 759, 764, 724

4

S.E.2d 724, 726 (2012); Cuccinelli v. Rector & Visitors of the Univ. of Va., 283 Va. 420, 425, 722 S.E.2d 626, 629 (2012).

We review a circuit court's ruling on a demurrer de novo. Schilling v. Schilling, 280 Va. 146, 148, 695 S.E.2d 181, 183 (2010).

A common law complaint for libel or slander historically included three elements: the inducement, an explanation of the facts demonstrating that the allegedly defamatory statement is actionable; the colloquium, an explanation of how the allegedly defamatory statement refers to the plaintiff, if he is not explicitly named; and the innuendo, an explanation of the allegedly defamatory meaning of the statement, if it is not apparent on its face. Black's Law Dictionary 300, 845, 861 (9th ed. 2009); see also Moseley v. Moss, 47 Va. (6 Gratt.) 534, 549–50 (1850).

It is the innuendo that is at issue in this case. Phillip avers that the article created the defamatory implication that he acted unethically "by obtaining preferential treatment" for Kevin. It did so by juxtaposing an insinuation of special treatment with the reported facts that he was an assistant principal at another school in the same school system and that he had been a successful pole vaulting coach at Great Bridge where Brian and Kevin were successful pole vaulting team members. We disagree.

5

Where, as here, a plaintiff alleges that he has been defamed not by statements of fact that are literally true but by an implication arising from them, the alleged implication must be reasonably drawn from the words actually used. Chapin v. Knight-Ridder, Inc., 993 F.2d 1087, 1092-93 (4th Cir. 1993); see also Hyland v. Raytheon Tech. Servs. Co., 277 Va. 40, 48, 670 S.E.2d 746, 751 (2009) (stating that a plaintiff may bring an action for defamation for "any implications, inferences, or insinuations that reasonably could be drawn from each statement" of fact (emphasis added)); Union of Needletrades, Indus. & Textile Emples. v. Jones, 268 Va. 512, 519, 603 S.E.2d 920, 924 (2004) (stating plaintiff may not bring a defamation action for "statements which cannot reasonably be interpreted" to impute a false fact about him (emphasis added)); Carwile, 196 Va. at 9, 82 S.E.2d at 592 (permitting an action for defamation where the injurious factual assertion "is a reasonable implication" of the published statements) (emphasis added)). Thus, the question for the circuit court when ruling on the demurrer was whether, as a matter of law, the article is reasonably capable of the defamatory meaning Phillip ascribes to it.[2]

---

[2] Phillip cites Carwile and several other cases, arguing that Virginia law recognizes a claim for defamation by inference, implication, or insinuation. E.g., 196 Va. at 7, 82 S.E.2d at 592. We agree that it does. However, that is not the question here.

> In determining whether the words and statements complained of in the instant case are reasonably capable of the meaning ascribed to them by innuendo, every fair inference that may be drawn from the pleadings must be resolved in the plaintiff's favor. However, the meaning of the alleged defamatory language can not, by innuendo, be extended beyond its ordinary and common acceptation. The province of the innuendo is to show how the words used are defamatory, and how they relate to the plaintiff, but it can not introduce new matter, nor extend the meaning of the words used, or make that certain which is in fact uncertain.

Carwile v. Richmond Newspapers, Inc., 196 Va. 1, 8, 82 S.E.2d 588, 592 (1954). This is a question of law to be decided on demurrer. See Perk v. Vector Resources Group, 253 Va. 310, 316-17, 485 S.E.2d 140, 144 (1997). Ensuring that defamation suits proceed only upon statements which actually may defame a plaintiff, rather than those which merely may inflame a jury to an award of damages, is an essential gatekeeping function of the court.

The article draws a stark contrast between how Kevin and Patrick were affected in the aftermath of the incidents. This insinuates that Kevin may have benefited from special treatment. Nevertheless, the article does not create a reasonable implication that Phillip solicited or procured the insinuated special treatment. It does not state or suggest that Phillip

7

undertook any affirmative action to arrange or endorse the school system's disciplinary response to the incidents.

The information in the article may suggest that Phillip had an uncommon acquaintance with school administrators at Great Bridge because he formerly had coached there and currently was an administrator at another school. It may also suggest that they were favorably disposed towards Phillip because of his success as a coach there. One might reasonably infer from these facts that Kevin would have received harsher discipline if they were not true. But Phillip was not implicated as the instigator of any preferential treatment. The reasonable implication is that Great Bridge's administrators may have acted on their own initiative out of sympathy or regard for Phillip, not that he intervened in their disciplinary decisions. The article disclaimed even that implication by quoting the spokesperson's denial.[3]

Phillip also argues that several witnesses testified at trial that they inferred from the article that he had solicited or procured special treatment for Kevin. He also argues that the jury's verdict is conclusive because the fact-finder determined that the article created that implication. We again

_____

[3] Further, the testimony of the school system's supervisor of discipline established that the disciplinary decision in Kevin's case was not in the hands of Great Bridge's administrators at all.

8

disagree.  As noted above, the question of whether the article is reasonably capable of the defamatory meaning Phillip ascribes to it is a question of law, not fact.  Resolving it is an essential threshold, gatekeeping function of the court before a case is submitted to the jury.  See Perk, 253 Va. at 316-17, 485 S.E.2d at 144 (concluding that the alleged statements were not "sufficiently defamatory on their face to permit a fact finder to decide whether in fact the statements were actually defamatory" when determining whether a defamatory charge could be inferred); Gazette, 229 Va. at 29, 325 S.E.2d at 733 (concluding that a "publication was sufficiently defamatory on its face, under Carwile, to permit a jury to decide whether in fact the statement actually was defamatory" (emphasis omitted)); Cook v. Patterson Drug Co., 185 Va. 516, 521, 39 S.E.2d 304, 307 (1946) ("It is the duty of the court to define what constitutes insulting words, and it is for the jury to say whether the particular words come within the definition.").

As a matter of law, the article is not reasonably capable of the defamatory meaning Phillip ascribes to it.  The implication that may be reasonably drawn from the article does not defame Phillip.  An implication defaming Phillip cannot be reasonably drawn.  Accordingly, the circuit court erred by overruling the defendants' demurrer.  However, the error is

9

supplanted by its final judgment in favor of the defendants.  We affirm that final judgment.

Affirmed.